# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# EASTERN DISTRICT OF TENNESSEE

In re

                                Case No.  07-32016

WEBB MTN, LLC

               Debtor

        WEBB MTN, LLC

              Plaintiff

          v.                           Adv. Proc. No. 08-3070

EXECUTIVE REALTY PARTNERSHIP, L.P.,
GERALD FRANKLIN, TRUSTEE,
GREENBRIER DEVELOPERS, LLC,
M&A ENTERPRISES, INC.,
KENNETH WHALEY

             Defendants

## MEMORANDUM ON MOTION TO DISMISS
## ADVERSARY PROCEEDING, MOTION OF WEBB MTN, LLC
## FOR SUMMARY JUDGMENT, DEFENDANTS' CROSS
## MOTION FOR SUMMARY JUDGMENT, AND MOTION TO
## STRIKE PORTIONS OF AFFIDAVIT OF KENNETH WHALEY

**APPEARANCES:**   GENTRY, TIPTON & McLEMORE, P.C.
              Maurice K. Guinn, Esq.
              W. Morris Kizer, Esq.
              Post Office Box 1990
              Knoxville, Tennessee 37901
              Attorneys for Plaintiff

              HODGES, DOUGHTY & CARSON
              Thomas H. Dickenson, Esq.
              Oliver D. Adams, Esq.
              Post Office Box 869
              Knoxville, Tennessee  37901-0869
              Attorneys for Defendants

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding was commenced on May 27, 2008, by the Complaint filed by the Plaintiff seeking to nullify and/or set aside four quit claim deeds executed by the Plaintiff in favor of the Defendants. The Defendants filed a Motion to Dismiss Webb Mtn, LLC's Adversary Proceeding For Failure to State a Claim Upon Which Relief Can Be Granted and Failure to Plead Fraud With Particularity on July 8, 2008, after which the Plaintiff, on July 31, 2008, filed an Amended Complaint adding eight additional counts. On August 1, 2008, the Plaintiff filed the Plaintiff's Response to Defendants' Motion to Dismiss Webb Mtn, LLC's Adversary Proceeding.

On August 11, 2008, the Defendants filed (1) an Amended Motion to Dismiss Webb Mtn, LLC's Adversary Proceeding for Failure to State a Claim Upon Which Relief Can be Granted and Failure to Plead Fraud With Particularity (Amended Motion to Dismiss Adversary Proceeding); and (2) a Reply to Webb Mtn, LLC's Response to Defendants' Motion to Dismiss Adversary Proceeding. On August 25, 2008, the Plaintiff, pursuant to E.D. Tenn. LBR 7007-1(a), filed its Response of Webb Mtn, LLC to the Defendants' Amended Motion to Dismiss (Response to Amended Motion to Dismiss Adversary Proceeding).

Thereafter, on September 2, 2008, the Plaintiff filed the Motion of Webb Mtn, LLC for Summary Judgment (Motion for Summary Judgment), asking the court to grant it a summary judgment with respect to Counts VII, VIII, and X of the Amended Complaint. As required by E.D. Tenn. LBR 7056-1, the Motion for Summary Judgment is accompanied by the Memorandum in Support of Webb Mtn, LLC's Motion for Summary Judgment and is supported by the Statement by Webb Mtn, LLC of Undisputed Material Facts (Plaintiff's Statement of Undisputed Facts) and the Affidavit of Jack Collier (Collier Affidavit). Incorporated into and made a part of the Collier

2

Affidavit as Collective Exhibit A are the following:  (1)  a Deed of Trust dated March 24, 2006, between the Plaintiff as Grantor and R. Patrick Harrell, Trustee, by which the Plaintiff secured a $10,465,000.00 Promissory Note to the Defendant, Greenbrier Developers, LLC, with a 195.89 acre tract in Sevier County, Tennessee; (2)  a Deed of Trust dated March 24, 2006, between the Plaintiff, as Grantor, and R. Patrick Harrell, Trustee, by which the Plaintiff secured a $4,790,000.00 Promissory Note to the Defendants, Kenneth Whaley, Greenbrier Developers, LLC, M&A Enterprises, Inc., and Gerald Franklin, Trustee, with a 71.21 acre tract in Sevier County, Tennessee; (3)  a Deed of Trust dated March 24, 2006, between the Plaintiff, as Grantor, and R. Patrick Harrell, Trustee, by which the Plaintiff secured a $990,000.00 Promissory Note to the Defendant, Executive Realty Partnership, L.P., with a 21.0 acre tract in Sevier County, Tennessee; and (4)  a Deed of Trust dated March 24, 2006, between the Plaintiff, as Grantor, and R. Patrick Harrell, Trustee, by which the Plaintiff secured a $8,980,000.00 Promissory Note to the Defendant, Gerald Franklin, Trustee, with tracts encompassing 1,440 acres in Sevier County, Tennessee.  All four Deeds of Trust were recorded in the Office of the Register of Deeds for Sevier County, Tennessee, on March 28, 2006.

The Collier Affidavit also incorporates as Collective Exhibit B the following:  (1)  a Quit Claim Deed dated March 27, 2007, by which the Plaintiff conveyed and quit claimed to the Defendant, Greenbrier Developers, LLC, its interest in the 195.89 acre tract in Sevier County, Tennessee, securing the $10,465,000.00 Promissory Note; (2)  a Quit Claim Deed dated March 27, 2007, by which the Plaintiff conveyed and quit claimed to the Defendant, Executive Realty Partnership, L.P., its interest in the 21 acre tract in Sevier County, Tennessee, securing the $990,000.00 Promissory Note; (3)  a Quit Claim Deed dated March 27, 2007, by which the Plaintiff

conveyed and quit claimed to the Defendant, Gerald Franklin, Trustee, its interest in the 1,440 acres

securing the $8,980,000.00 Promissory Note to Gerald Franklin, Trustee; and (4) a Quit Claim Deed

dated March 27, 2007, by which the Plaintiff conveyed and quit claimed to the Defendants, Kenneth

Whaley, Greenbrier Developers, LLC, and Gerald Franklin, Trustee, its interest in the 71.21 acre

tract securing the $4,790,000.00 Promissory Note to Kenneth Whaley, Trustee, Greenbrier

Developers, M&A Enterprises, Inc., and Gerald Franklin, Trustee.[1]

The Defendants filed their Response to Webb Mtn, LLC's Motion for Summary Judgment

and Defendants' Cross Motion for Summary Judgment (Cross Motion for Summary Judgment) on

September 22, 2008, asking the court to grant them a summary judgment and dismiss Counts VII,

VIII, and X of the Amended Complaint.  The Cross Motion for Summary Judgment is accompanied

by the Defendants' Memorandum of Law in Opposition to Webb Mtn, LLC's Motion for Summary

Judgment and in Support of Defendants' Motion for Summary Judgment, and the Response to Webb

Mtn, LLC's Statement of Undisputed Material Facts and Defendants' Statement of Undisputed

Material Facts (Defendants' Statement of Undisputed Facts).

The Cross Motion for Summary Judgment is also supported by the Affidavit of Kenneth

Whaley in Opposition to Motion of Plaintiff, Webb Mtn, LLC For Summary Judgment and In

Support of Judgment in Favor of Defendants (Whaley Affidavit).  Incorporated into and made a part

of the Whaley Affidavit as Collective Exhibit A are the following:  (1) the $990,000.00 Promissory

Note executed by the Plaintiff in favor of the Defendant, Executive Realty Partnership, L.P., on

---

[1] M&A Enterprises, Inc., one of the four holders of the $4,790,000.00 Promissory Note and a beneficiary under the Deed of Trust securing that Note, was not a grantee under this Quit Claim Deed.  Pursuant to the Supplemental Stipulation filed by the parties on January 23, 2009, this omission has no bearing on the issues presently before the court.

4

March 24, 2006, and Deed of Trust of the same date securing that indebtedness with the 21.0 acre

tract in Sevier County, Tennessee; (2) the $8,980,000.00 Promissory Note executed by the Plaintiff

in favor of the Defendant, Gerald Franklin, Trustee, on March 24, 2006, and Deed of Trust of the

same date securing that indebtedness with the 1,440 acres in Sevier County, Tennessee; (3) the

$10,465,000.00 Promissory Note executed by the Plaintiff in favor of the Defendant, Greenbrier

Developers, LLC, on March 24, 2006, and Deed of Trust of the same date securing that indebtedness

with the 195.89 acre tract in Sevier County, Tennessee; and (4) the $4,790,000.00 Promissory Note

executed by the Plaintiff in favor of the Defendants, Kenneth Whaley, Greenbrier Developers, LLC,

M&A Enterprises, Inc., and Gerald Franklin, Trustee, on March 24, 2006, and Deed of Trust of the

same date securing that indebtedness with the 71.21 acres in Sevier County, Tennessee.

Also incorporated into the Whaley Affidavit as Collective Exhibit B are Year 2007 Property

Tax Statements for the real property that is the subject of the aforementioned Deeds of Trusts and

Quit Claim Deeds and a check dated February 29, 2008, payable to Jettie Clabo - Sevier County

Trustee, evidencing payment of these property taxes by Kenneth Whaley in the amount of

$15,678.00.[2]  Finally, the Defendants rely upon excerpts of testimony of Jack Collier, in his capacity

as representative of the Plaintiff:  (1) from the Plaintiff's meeting of creditors held on August 1,

2007; (2) from his deposition taken September 4, 2007; and (3) from the trial in the Plaintiff's case

held on September 11, 2007, in connection with the Motion to Dismiss Chapter 11 Case (Motion to

Dismiss Bankruptcy Case) filed by the Defendants on August 10, 2007.

---

[2] The check is unsigned, but Mr. Whaley states that he paid these taxes with the February 29, 2008 check.  *See*
WHALEY AFF. ¶ 10.  The Plaintiff does not disagree.

5

On October 13, 2008, the Plaintiff, in accordance with E.D. Tenn. LBR 7007-1(a) and 7056-1(b), filed a Response of Webb Mtn, LLC to Defendants' Cross Motion For Summary Judgment, the Memorandum of Webb Mtn, LLC in Opposition to Defendants' Cross Motion For Summary Judgment, and Response by Webb Mtn, LLC to Defendants' Statement of Undisputed Material Facts. The Plaintiff additionally filed the Motion of Webb Mtn, LLC to Strike Portions of Affidavit of Kenneth Whaley (Motion to Strike) on October 13, 2008, to which the Defendants filed a Response and Objection of Defendants to Motion of Webb Mtn, LLC to Strike Portions of Affidavit of Kenneth Whaley on October 21, 2008.

Presently before the court are the Amended Motion to Dismiss Adversary Proceeding, the Motion for Summary Judgment, the Cross Motion for Summary Judgment, and the Motion to Strike. In addition to the record provided by the parties, the court, in its resolution of the present motions and pursuant to Rule 201 of the Federal Rules of Evidence, takes judicial notice of material undisputed facts of record in the Plaintiff's bankruptcy case file, including the Memorandum on Motion to Determine That Debtor is Subject to the "Single Asset Real Estate" Provisions of 11 U.S.C. § 362(d)(3), filed on March 6, 2008, and affirmed by the United States District Court on August 26, 2008 (hereinafter cited to as Mar. 6, 2008 Mem. Op.). *See Baccala Realty, Inc. v. Fink (In re Fink)*, 351 B.R. 511, 517, n.1 (Bankr. N.D. Ill. 2006) (holding that a court may take judicial notice of the record in its own cases.).

This is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (H), and (O) (2005).

6

# I

The Plaintiff is a Tennessee limited liability company, and its sole member is Jack Collier, who has extensive experience in commercial real estate development, operation, and management. PLAINTIFF'S STMT. OF UNDISP. FACTS ¶ 2; DEFS.' STMT. OF UNDISP. FACTS ¶ 17; COLLIER AFF. at ¶ 2; DEFS.' COLL. EX. 1 at 9, 4-8, 99-101, 107. On October 5, 2005, Mr. Collier, individually, entered into an agreement with the Defendants for the purchase of five tracts of real property consisting of approximately 1,865.60 acres known as Webb Mountain, State Route 416, Pittmann Center Road, Sevierville, Sevier County, Tennessee, for the price of $27,975,000.00, which was subsequently assigned to the Plaintiff. PLAINTIFF'S STMT. OF UNDISP. FACTS ¶ 4; MAR. 6, 2008 MEM. OP. at 3.

The sum of $1,750,000.00 was paid at closing and the remaining $26,225,000.00 was financed through the following Promissory Notes executed by the Plaintiff on March 24, 2006, each having a maturity date of January 3, 2007: (1) Promissory Note with Executive Realty Partnership, L.P. in the amount of $990,000.00, secured by 21 acres; (2) Promissory Note with M&A Enterprises, Inc. in the amount of $1,000,000.00, secured by 131 acres; (3) Promissory Note with Gerald Franklin, Trustee, in the amount of $8,980,000.00, secured by 1,440 acres; (4) Promissory Note with Kenneth Whaley, Greenbrier Developers, LLC, M & A Enterprises, Inc., and Gerald Franklin, Trustee, in the amount of $4,790,000.00, secured by 71.21 acres; and (5) Promissory Note with Greenbrier Developers, LLC in the amount of $10,465,000.00, secured by 195.89 acres (collectively, Promissory Notes). PLAINTIFF'S STMT. OF UNDISP. FACTS ¶ 4, 6; DEFS.' STMT. OF UNDISP. FACTS ¶ 2; COLLIER AFF. at ¶ 4, 6; WHALEY AFF. at ¶ 2, COLL. EX. A. Each of the Promissory Notes was

secured by a corresponding Deed of Trust (collectively, Deeds of Trust), which were recorded with

the Sevier County Register of Deeds on March 28, 2006.  PLAINTIFF'S STMT. OF UNDISP. FACTS ¶

4, 6; DEFS.' STMT. OF UNDISP. FACTS ¶ 2; COLLIER AFF. at ¶ 4, COLL. EX. A; WHALEY AFF. at ¶ 2,

COLL. EX. A.

> Each of the five Promissory Notes was non-recourse, providing that
>
> Notwithstanding anything in this Note or the Deed of Trust to the contrary, this Note and the Deed of Trust are non-recourse and the Borrower shall be liable upon the indebtedness evidenced hereby and for the other obligations arising under the Deed of Trust to the full extent (but only to the extent) of the security therefore, the same being the sole remedy of the Lender, and Borrower shall have no personal liability of any nature whatsoever to Lender.

DEFS.' STMT. OF UNDISP. FACTS ¶ 3; WHALEY AFF. at ¶ 2, COLL. EX. A.  Correspondingly, each

Deed of Trust contained the following clause in the event of default:

> 23.  NONRECOURSE.  Notwithstanding any provision in this Deed of Trust or the Note to the contrary, this Deed of Trust and the Note are non-recourse and the Grantor shall be liable upon the indebtedness evidenced hereby and for the other obligations arising under the Deed of Trust to the full extent (but only to the extent) of the security therefore, the same being the sole remedy of the Lender, and Grantor shall have no personal liability of any nature whatsoever to Lender.

DEFS.' STMT. OF UNDISP. FACTS ¶ 3; COLLIER AFF. COLL. EX. A; WHALEY AFF. at ¶ 2, COLL. EX.

A.  Each Deed of Trust also contained the following additional clauses:

> 11.  FORBEARANCE BY LENDER NOT A WAIVER.  Forbearance by Lender in exercising any right or remedy hereunder, or any related right or remedy otherwise afforded by law, shall not be a waiver of, or preclude the subsequent exercise of any such right or remedy.  The receipt by Lender of any past due installments under the Note or any other late payments of the Indebtedness shall not deprive Lender of the right to accelerate the maturity of the Indebtedness or of any other right of enforcement existing pursuant to the terms of this instrument.  The payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's rights to accelerate the maturity of the Indebtedness because of default hereunder.

12. GRANTOR NOT RELEASED.  If Lender agrees for the benefit of any debtor to extend the time for payment or to modify the amortization of the Indebtedness, or any part thereof, Lender's action shall not release in any manner the continuing liability of Grantor or any other person on the Indebtedness.  Grantor shall have no right to require Lender to initiate proceedings against any obligor on the Indebtedness, to refuse to extend the time for payment by such person, or to refuse otherwise to modify the amortization of any of the Indebtedness.

. . . .

18. PRIORITY OF THIS DEED OF TRUST; FUTURE ADVANCES; EXTENSIONS; MODIFICATIONS AND RENEWALS. . . . This paragraph shall serve as notice to any subsequent encumbrancer of the Property that Lender claims the priority of the lien of this Deed of Trust for such Future Advances, as well as for all other obligations secured hereby.  This paragraph shall also be notice that Lender reserves the right to modify, extend, consolidate, and renew the Indebtedness, or any portion thereof, and the rate of interest charged thereon, without affecting the priority of the lien created by this Deed of Trust.

19. WAIVER. . . . Grantor expressly waives all legal, equitable, and statutory rights of redemption, exemption or homestead, all rights arising by virtue of marriage, and all other similar exemptions and rights arising under or created by an applicable statute of judicial decision.

COLLIER AFF. COLL. EX. A; WHALEY AFF. COLL. EX. A.

On June 23, 2006, the Plaintiff made the following payments to the Defendants totaling $3,250,000.00:  (1) $50,000.00 to Executive Realty Partnership; (2) $1,000,000.00 to M&A Enterprises, Inc.; (3) $1,000,000.00 to Gerald Franklin, Trustee; (4) $200,000.00 to Kenneth Whaley, Greenbrier Developers, LLC, M&A Enterprises, Inc., and Gerald Franklin, Trustee; and (5) $1,000,000.00 to Greenbrier Developers, LLC.  PLAINTIFF'S STMT. OF UNDISP. FACTS ¶ 5; COLLIER AFF. at ¶ 5.  The Plaintiff paid the remaining balance owed to M&A Enterprises, Inc., on its $1,000,000.00 Promissory Note on December 8, 2006, and the Deed of Trust encumbering that 131 acres was released.  PLAINTIFF'S STMT. OF UNDISP. FACTS ¶ 6; COLLIER AFF. at ¶ 6.  The four

remaining Promissory Notes were not paid in accordance with their terms at maturity on January 3, 2007, and Gerald Franklin orally agreed to a thirty day extension with Jack Collier, principal of the Plaintiff. DEFS.' STMT. OF UNDISP. FACTS ¶ 5; WHALEY AFF. at ¶ 3. Following the expiration of the additional thirty days, the Plaintiff remained in default, and the Defendants hired Patrick Harrell, Esquire, who initiated foreclosure proceedings against the still encumbered approximately 1,727 acres (collectively, the Webb Mountain Property) in accordance with the four remaining Deeds of Trust. DEFS.' STMT. OF UNDISP. FACTS ¶ 6; WHALEY AFF. at ¶ 3.

Subsequent to commencement of the foreclosure proceedings but prior to the date of sale, Mr. Collier contacted Mr. Whaley, seeking a ninety day postponement of the sale in order to arrange for substitute financing to pay the Promissory Notes in full. DEFS.' STMT. OF UNDISP. FACTS ¶ 7; WHALEY AFF. at ¶ 3. After consulting with Gerald Franklin, Mr. Whaley advised Mr. Collier that the note holders would agree to the extension under the following conditions: "if (a) the interest due on the Gerald Franklin, Trustee, note was brought current and (b) the Debtor executed and placed (in escrow) quitclaim deeds for the properties so that at the end of the 90-day extension the note holders did not have to deal with any further foreclosure proceedings and the deeds could simply be recorded if payment was not made." DEFS.' STMT. OF UNDISP. FACTS ¶ 7; WHALEY AFF. at ¶ 3. Thereafter, Mr. Collier met with Mr. Franklin, Mr. Whaley, and their attorney, Steve Marshall, to finalize documents relating to the agreed upon postponement of the foreclosure sale. DEFS.' STMT. OF UNDISP. FACTS ¶ 7; WHALEY AFF. at ¶ 4. Additionally, during the meeting, Mr. Collier communicated by telephone with Mary Fertl, an attorney representing the Plaintiff, concerning the documentation. DEFS.' STMT. OF UNDISP. FACTS ¶ 7; WHALEY AFF. at ¶ 4. There were not,

however, any discussions concerning the Plaintiff's rights to repurchase the Webb Mountain

Property in the event the proposed quit claim deeds were released from escrow and recorded. DEFS.'

STMT. OF UNDISP. FACTS ¶ 9; WHALEY AFF. at ¶ 5.

On March 27, 2007, the parties entered into a Conditional Extension of Borrowers'

Obligations Under Promissory Note (Conditional Extension Agreement) which provides, in material

part:

> Webb Mtn, LLC . . . has defaulted on its obligation to pay four (4) Promissory
> Notes executed March 24, 2006, to Kenneth Whaley, Greenbrier Developers, LLC,
> Gerald Franklin, Trustee, and Executive Realty Partnership, LP . . . .[3]
>
> The Promissory Notes are secured by Deeds of Trust for each note, duly
> recorded in the Register's Office for Sevier County, Tennessee. The Note Holders
> have, pursuant to the terms of the Promissory Notes, declared that Borrower is in
> default and have demanded that [sic] the notes to be paid in full. Borrower agrees
> that it is in default, that it has no valid legal defense to the pending foreclosure
> proceedings and that the full balance of each Promissory Note is due and payable in
> full, plus applicable interest and attorney fees as consideration for Note Holders
> foregoing foreclosure at this time. The parties hereto agree that upon the execution
> and delivery of this Agreement and the Quit Claim Deeds in escrow as contemplated
> herein, the parties agree on an extension of the Borrower's obligations under said
> Promissory Notes. However, the parties agree that the foreclosure proceedings
> already filed by Note Holders shall remain in full force and effect, but that the sale
> date for said foreclosures shall be adjourned until after June 25, 2007, and in no event
> shall any of said sale dates occur on or before June 25, 2007. Therefore, subject to
> and conditioned upon performance and/or satisfaction of the terms, provisions, and
> conditions set out below, the parties agree to extend the Borrowers' obligations under
> the Promissory Notes as follows:
>
> The Borrower shall pay all interest due through March 27, 2007, on the
> Gerald Franklin, Trustee Promissory Note as follows:
>
> Gerald Franklin, Trustee, Note $421,679.63

---

[3] M&A Enterprises, Inc., was not a party to the Conditional Extension Agreement. *See supra* n. 1.

11

Said amount represents all of the interest due and payable on the Gerald Franklin, Trustee Promissory Note as of March 27, 2007.

The Borrower shall immediately execute Quit Claim Deeds to the four (4) tracts of real property conveyed to Borrower by Note Holders on March 24, 2006. Said Quit Claim Deeds shall be held in escrow by Patrick Harrell, Attorney and Escrow Agent, with an instruction letter from the Borrower executed simultaneously herewith that if Buyer fails to pay its entire obligation of principal and/or interest under the Promissory Notes on or before June 25, 2007, the Escrow Agent shall immediately record the Quit Claim Deeds, thereby transferring any and all right, title and interest that Webb Mtn, LLC may have in and to the four (4) tracts of real property to the Note Holders.  However, Note Holders may elect to foreclose on those properties secured by a Deed of Trust at their option after June 25, 2007, if the Notes have not been paid in full.  The Borrower agrees not to encumber the subject properties or convey any interest in the real properties prior to meeting its obligations herein.  The parties agree and recognize that this provision may be modified by written agreement of the parties with regard to any portion of the four (4) tracts of real property for the purpose of allowing the Borrower to begin development in order to generate cash flow, however, nothing herein shall bind the Note Holders to agree to modify this Agreement or subordinate their secured interest in any portion of the real property for any purpose.  Upon payment in full of the Promissory Note(s), Escrow Agent shall return the original, executed Quit Claim Deed(s) to Borrower relating to such Promissory Note(s) paid in full.

The parties agree that the Borrower shall pay all reasonable attorney fees and escrow agent fees incurred on behalf of the Note Holders as a result of the Borrower's default, as of the date of execution of this Agreement, but not as to future fees.

This Agreement shall be deemed an amendment and extension of the Promissory Notes as provided herein.

This is the entire Agreement of the parties and may not be modified except in writing and executed by all parties.  The Borrower has not relied upon any legal advice by Note Holders' counsel in executing this Agreement, has further had the opportunity to consult with its own counsel and entered into this transaction freely and voluntarily of its own free will and accord.

AMD. COMPL. EX. 1; PLAINTIFF'S STMT. OF UNDISP. FACTS ¶ 7; DEFS.' STMT. OF UNDISP. FACTS ¶ 8; COLLIER AFF. at ¶ 7; WHALEY AFF. at ¶ 4.  Under the terms of the Conditional Extension Agreement, Mr. Collier, as Managing Member/Sole Member of the Plaintiff, executed four Quit

Claim Deeds under the terms of which the Plaintiff conveyed "for and in consideration of Ten

Dollars ($10.00) and other good and valuable consideration" the tracts of property consisting of

approximately 1,727 acres securing the outstanding balances due under the Promissory Notes owed

to (1) Greenbrier Developers, LLC ($10,465,000.00); (2) Executive Realty Partnership, L.P.

($990,000.00); (3) Gerald Franklin, Trustee ($9,800,000.00); and (4) Kenneth Whaley, Greenbrier

Developers, LLC, M&A Enterprises, Inc., and Gerald Franklin, Trustee ($4,790,000.00)[4]

(collectively, Quit Claim Deeds). PLAINTIFF'S STMT. OF UNDISP. FACTS ¶ 7; COLLIER AFF. at ¶ 7.

Each of the Quit Claim Deeds expressly provides that "[t]his conveyance is made in lieu of Grantee

foreclosing on the Deed of Trust."  No additional money was loaned to the Plaintiff in connection

with the Conditional Extension Agreement. DEFS.' STMT. OF UNDISP. FACTS ¶ 10; WHALEY AFF.

at ¶ 6.

As referenced in the Conditional Extension Agreement, the Plaintiff, through Mr. Collier,

Kenneth Whaley, Greenbrier Developers, LLC, Gerald Franklin, Trustee, Executive Realty

Partnership, L.P., and Hellman & Harrell, PLLC, as Escrow Agent through its Chief Manager,

Daniel Hellman, entered into an Escrow Agreement also dated March 27, 2007, providing in material

part:[5]

> WHEREAS, Webb Mtn. and Lender [Kenneth Whaley, Greenbrier Developers, LLC,
> Gerald Franklin, Trustee, and Executive Realty Partnership, L.P.] desire to escrow
> four quit claim deeds with Hellman & Harrell, PLLC[.]

---

[4] The amounts inserted parenthetically adjacent to the names of the respective note holders reflect the original amounts of the Promissory Notes and not the unpaid balances.

[5] M&A Enterprises, Inc., was not a named party to the Escrow Agreement which was signed by the Plaintiff and the Escrow Agent. *See supra* n. 1.

. . . .

1.  AGREEMENT TO HOLD DOCUMENTS.

Webb Mtn. shall, pursuant to the terms and conditions of the Conditional Extension of Borrower's Obligations Under Promissory Notes dated March 27, 2007 ("Conditional Extension"), deliver to Escrow Agent four original fully executed and properly notarized Quit Claim Deeds for the property secured by each Lender's lien, each Quit Claim Deed conveying the property secured by each lender's lien back to the respective lenders.

Escrow Agent shall, upon written notification certifying that Webb Mtn. is in default in the payment of principal and/or interest required by the Conditional Extension, as to such lender's note, from any one lender, immediately record the Quit Claim Deed for the property that is securing the promissory note which is in default.  No further notice to, or demand of, any other party shall be required.

In the event that Webb Mtn. tenders full payment on any one or more of the promissory notes, and upon receipt of written notification of full payment from the appropriate lender, or other reliable evidence of payment, Escrow Agent shall return to Webb Mtn., the original Quit Claim Deed for the property secured by the lien that is paid in full.

. . . .

6.  NOTICES.

        Any and all Notice(s) permitted or required by this Escrow Agreement, or by the Escrow Agent shall be in writing and shall be served by certified mail, return receipt requested, postage prepaid, and addressed to the party to be notified (at the addresses contained in the signature blocks), or by deliver in person, or, if acceptable by the recipient, by telecopier delivery as evidenced by confirmation of the sender and the recipient, and as to the parties hereto as set forth below or as later agreed by written confirmation of the parties.

7.  BINDING EFFECT.

        This Escrow Agreement shall be binding upon and shall inure to the benefit and burden solely to the parties hereto and their respective heirs, executors, administrators, personal representatives, successors, and assigns.

14

AMD. COMPL. EX. 2; PLAINTIFF'S STMT. OF UNDISP. FACTS ¶ 7; DEFS.' STMT. OF UNDISP. FACTS ¶ 8; COLLIER AFF. at ¶ 7; WHALEY AFF. at ¶ 4. Neither the Conditional Extension Agreement nor the Escrow Agreement was recorded with the Sevier County Register of Deeds. PLAINTIFF'S STMT. OF UNDISP. FACTS ¶ 8.

As contemplated under the Conditional Extension Agreement, the executed Quit Claim Deeds were placed in escrow, an interest payment of $421,679.63 was made to Gerald Franklin, Trustee, and the foreclosure proceedings against the Webb Mountain Property were adjourned. PLAINTIFF'S STMT. OF UNDISP. FACTS ¶ 7; DEFS.' STMT. OF UNDISP. FACTS ¶ 9; COLLIER AFF. at ¶ 7; WHALEY AFF. at ¶ 5. Thereafter, Mr. Whaley and Mr. Franklin worked with Mr. Collier in his efforts to refinance, sell the Webb Mountain Property, and/or find a joint venture partner, including taking potential investors on 'four-wheeler' tours of the property and introducing Mr. Collier to potential lenders. DEFS.' STMT. OF UNDISP. FACTS ¶ 18; DEFS.' COLL. EX. 1 at 40-41; 91. The Plaintiff did not, however, pay the Defendants the outstanding amounts due under the Promissory Notes, and on June 25, 2007, the date to which the Plaintiff's obligations under the Promissory Notes had been extended under the terms of the Conditional Extension Agreement, the Plaintiff filed the Voluntary Petition commencing its case under Chapter 11 of the Bankruptcy Code. PLAINTIFF'S STMT. OF UNDISP. FACTS ¶ 3; DEFS.' STMT. OF UNDISP. FACTS ¶ 12; COLLIER AFF. at ¶ 3; WHALEY AFF. at ¶ 8.

On August 10, 2007, the Defendants filed the Motion to Dismiss Bankruptcy Case in the Plaintiff's case, arguing that the Chapter 11 bankruptcy case had not been filed in good faith. PLAINTIFF'S STMT. OF UNDISP. FACTS ¶ 9; COLLIER AFF. at ¶ 8. The evidentiary hearing on the

15

Motion to Dismiss Bankruptcy Case was held on September 11, 2007, and on September 17, 2007, the court entered an Order dismissing the Plaintiff's bankruptcy case (Dismissal Order) accompanied by its Memorandum on Motion for Entry of Order Determining That Debtor is Subject to the "Single Asset Real Estate" Provisions of 11 U.S.C. § 362(d)(3) and Motion to Dismiss Chapter 11 Case.[6] PLAINTIFF'S STMT. OF UNDISP. FACTS ¶ 9; COLLIER AFF. at ¶ 8.   Because the Plaintiff had not complied with the terms, conditions, and provisions of the Conditional Extension Agreement, the four Quit Claim Deeds previously placed in escrow were released on September 18, 2007, and recorded with the Register of Deeds for Sevier County, Tennessee, at 12:06 p.m. that same day. AMD. COMPL. COLL. EX. 4; PLAINTIFF'S STMT. OF UNDISP. FACTS ¶ 10; DEFS.' STMT. OF UNDISP. FACTS ¶ 13; COLLIER AFF. at ¶9; WHALEY AFF. at ¶ 9.

The Plaintiff filed the Motion of Webb Mtn, LLC for Reconsideration and to Alter or Amend Order and Judgment Dismissing Chapter 11 Case (Motion to Alter or Amend) on September 26, 2007, which was denied pursuant to an Order and Memorandum filed by the court on October 23, 2007.  Thereafter, on October 29, 2007, the Plaintiff filed a Notice of Appeal of the Dismissal Order, along with the Motion by Webb Mtn. LLC for Stay of Order (Motion for Stay Pending Appeal), which was denied on November 20, 2007, by an Order and supporting Memorandum.   On February 8, 2008, the United States District Court for the Eastern District of Tennessee filed an Order and Memorandum Opinion reversing the Dismissal Order and remanded the Plaintiff's case for further proceedings.  PLAINTIFF'S STMT. OF UNDISP. FACTS ¶ 12; COLLIER AFF. at ¶ 11.  The

---

[6] The Motion to Dismiss Bankruptcy Case was consolidated for trial with the Motion For Entry of Order Determining That Debtor is Subject to the "Single Asset Real Estate" Provisions of 11 U.S.C. § 362(d)(3) filed by the Defendants in the Plaintiff's case on August 1, 2007.

Plaintiff thereafter filed the Complaint commencing this adversary proceeding on May 27, 2008,

which it amended on July 31, 2008, by the filing of the Amended Complaint.

# II

## MOTION TO STRIKE

The Plaintiff filed its Motion to Strike, seeking to strike designated portions of the Whaley

Affidavit as being conclusory, speculative, argumentative, beyond the affiant's personal knowledge,

overbroad, seeking to limit or interpret written documents that speak for themselves, constituting a

legal conclusion, and containing inadmissible opinion testimony.  It grounds its objections in part

upon Rules 602 and 701 of the Federal Rules of Evidence.  Rule 602, entitled "Lack of Personal

Knowledge," provides, in material part, that "[a] witness may not testify to a matter unless evidence

is introduced sufficient to support a finding that the witness has personal knowledge of the matter.

Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony."

FED. R. EVID. 602.  Rule 701, entitled "Opinion Testimony by Lay Witnesses," provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of
> opinions or inferences is limited to those opinions or inferences which are (a)
> rationally based on the perception of the witness, (b) helpful to a clear understanding
> of the witness' testimony or the determination of a fact in issue, and (c) not based on
> scientific, technical, or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701.

The Plaintiff first seeks to strike the fourth sentence of paragraph 4 of the Whaley Affidavit

as being conclusory, speculative, beyond Mr. Whaley's personal knowledge, and as seeking to limit

or interpret written documents that speak for themselves.  Mr. Whaley, in this sentence, states that

17

the parties entered into the Conditional Extension Agreement for the purpose of avoiding a foreclosure action related to the Deeds of Trust securing the Plaintiff's indebtedness under the Promissory Notes.  The court finds nothing conclusory or speculative about this statement.  Mr. Whaley, as a party to the agreement, in both an individual capacity and as General Partner of Executive Realty Partnership, L.P., possesses sufficient personal knowledge regarding the facts leading to the execution of the Conditional Extension Agreement.  Furthermore, the Conditional Extension Agreement expressly provides the following:

> The Note Holders have, pursuant to the terms of the Promissory Notes, declared that Borrower is in default and have demanded that [sic] the notes to be paid in full. Borrower agrees that it is in default, that it has no valid legal defense to the pending foreclosure proceedings and that the full balance of each Promissory Note is due and payable in full, plus applicable interest and attorney fees as consideration for Note Holders foregoing foreclosure at this time.  The parties hereto agree that upon the execution and delivery of this Agreement and the Quit Claim Deeds in escrow as contemplated herein, the parties agree on an extension of the Borrower's obligations under said Promissory Notes.  However, the parties agree that the foreclosure proceedings already filed by Note Holders shall remain in full force and effect, but that the sale date for said foreclosures shall be adjourned until after June 25, 2007, and in no event shall any of said sale dates occur on or before June 25, 2007.

AMD. COMPL. EX. 1.  The fourth sentence of paragraph 4 only reiterates what is contained in the Conditional Extension Agreement, and while it is perhaps superfluous, it is undoubtedly based upon Mr. Whaley's personal knowledge of the agreement and will not be stricken.

The Plaintiff next seeks to strike as speculative, overbroad, and beyond his personal knowledge, the first sentence of paragraph 6 in which Mr. Whaley states that following the Plaintiff's default under the Promissory Notes, there was no discussion with Mr. Collier and/or anyone associated with the Plaintiff that the nature of the Conditional Extension Agreement, the Escrow Agreement, and/or the Quit Claim Deeds executed in connection therewith were to be a mortgage,

18

deed of trust financing transaction, or additional security.   Clearly, Mr. Whaley has personal

knowledge as to whether he personally carried on any such discussions with Mr. Collier or some

other representative of the Plaintiff, and there is nothing overbroad or speculative about his statement

to that end.   The first sentence of paragraph 6 will not be stricken although, to the extent this

sentence is deemed material, the court will limit its context to discussions had solely by Mr. Whaley.

In addition to the first sentence, the Plaintiff also seeks to strike the second sentence of

paragraph 6 as being speculative, argumentative, constituting a legal conclusion, and involving

inadmissible opinion testimony.   Here, the Motion to Strike will be granted and this sentence shall

be stricken.   While the court does not find the sentence to be argumentative or to contain

inadmissible opinion testimony, it is speculative and contains legal conclusions beyond the scope

of the documents and Mr. Whaley's personal knowledge.

The Plaintiff next seeks to strike paragraph 7 on the grounds Mr. Whaley's statements

involve opinion testimony and inferences outside the scope authorized under the Federal Rules of

Evidence, is conclusory, and seeks to interpret or limit written documents that speak for themselves.

This paragraph, consisting of a single sentence regarding Mr. Whaley's discussion of the "sole

purpose" of the Conditional Extension Agreement, the Escrow Agreement and the Quit Claim Deeds

is not conclusory or opinion testimony, nor does it offer an interpretation or limitation upon that

written document.   Instead, Mr. Whaley states, as a party to the agreement, his purpose for entering

into these documents.   Paragraph 7 will not be stricken.   Its application will, however, to the extent

deemed material by the court, be limited solely to Mr. Whaley.

Finally, the Plaintiff seeks to strike the second and third sentences of paragraph 9 of the Whaley Affidavit as being speculative, argumentative, constituting legal conclusions, and offering inadmissible opinion testimony.  The court agrees that these sentences, in which Mr. Whaley states his conclusions as to the legal effects of the Promissory Notes, Deeds of Trust, and Quit Claim Deeds, offers legal opinions outside the scope of his personal knowledge.  These sentences shall, accordingly, be stricken.

In summary, the court will strike the second sentence of paragraph 6 and the second and third sentences of paragraph 9 of the Whaley Affidavit.

### III

### MOTION FOR SUMMARY JUDGMENT AND
### CROSS MOTION FOR SUMMARY JUDGMENT

The Plaintiff, by its Motion For Summary Judgment, seeks a summary judgment with respect to Counts VII and VIII of the Amended Complaint, asking the court for a declaratory judgment pursuant to 28 U.S.C. § 2201 (2006)[7] to make findings that: (1) the Conditional Extension Agreement, Escrow Agreement, and the Quit Claim Deeds, as delivered into escrow on March 27,

---

[7]  Section 2201 provides:

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986 [26 USCS § 7428], a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930 [19 USCS § 1516a(f)(10)]), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

2007, collectively constituted a mortgage, equitable mortgage, or other real estate security agreement, transaction, or device securing obligations owed by the Plaintiff to the Defendants; and (2) because neither the Conditional Extension Agreement nor the Escrow Agreement was recorded with the Sevier County Register of Deeds, the mortgage, equitable mortgage, or other real estate security agreement allegedly created thereby, are unperfected and not binding upon a bankruptcy trustee or a debtor-in-possession acting in that capacity. The Plaintiff also seeks summary judgment with respect to Count X, seeking a judgment that the mortgage it alleges was created on March 27, 2007, by the Conditional Extension Agreement and Escrow Agreement, together with the Quit Claim Deeds executed on the same date, is avoidable under 11 U.S.C. § 544(a) (2005), and that it is entitled to recover the Webb Mountain Property for the benefit of the Plaintiff's bankruptcy estate pursuant to 11 U.S.C. § 550 (2005).

Conversely, the Defendants, by their Cross Motion For Summary Judgment, contend that they are entitled to a summary judgment dismissing Counts VII, VIII, and X of the Amended Complaint.

Rule 56, made applicable to adversary proceedings pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). When deciding a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The facts and all resulting

inferences are viewed in a light most favorable to the non-moving party, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986), and the court will decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 106 S. Ct. at 2512.

"[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,]" *Anderson*, 106 S. Ct. at 2510, and the moving party bears the initial burden of proof that there is no genuine issue of material fact, such that it is entitled to judgment as a matter of law. *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001). Thereafter, the burden shifts to the nonmoving party to provide sufficient proof of a genuine issue for trial through the use of affidavits or other evidence and not merely through reliance upon the allegations or denials contained in the pleadings. FED. R. CIV. P. 56(e)(2); *see also Matsushita*, 106 S. Ct. at 1356; *Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Any affidavits filed in support of or in opposition to summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." FED. R. CIV. P. 56(e)(1). "These requirements are mandatory[, and an] affidavit that does not satisfy the requirements of Rule 56(e) is subject to a motion to strike." *Collazos-Cruz v. United States*, 117 F.3d 1420 (table), 1997 U.S. App. LEXIS 17196, at *6-7, 1997 WL 377037, at *2 (6th Cir. 1997).

22

A

## COUNT VII

In its Motion for Summary Judgment, the Plaintiff first seeks a determination that the March 27, 2007 Conditional Extension Agreement, Escrow Agreement, and unrecorded Quit Claim Deeds delivered into escrow collectively constituted a mortgage, an equitable mortgage, or other real estate security agreement, transaction, or device securing the obligations owed by the Plaintiff to the Defendants.  In support of this argument, the Plaintiff relies upon a number of cases standing for the proposition that an absolute conveyance may be treated as a mortgage if the following indicia are present:  "(1) the fact that while the conveyance was absolute on its face, the consideration was pre-existing debt, and not new consideration; (2) that the agreement to reconvey was expressly conditioned on the payment of the entire pre-existing debt; (3) that the note was neither returned to the grantor nor credited; and (4) that the property was leased to the grantor for rent equivalent to the interest accruing on the pre-existing debt, thus permitting the grantor to remain in possession." MEM. IN SUPPORT OF MTN. FOR SUMM. JUDG. at 13.

The first of these cases, *Ruggles v. Williams*, 38 Tenn. 141 (Tenn. 1858), involved the determination of the priority of two recorded obligations, one in favor of Moffitt in the form of an absolute deed and the other in favor of Neuffer in the form of a mortgage.  Although the deed was absolute on its face, Moffitt admitted that he had intended it to be a mortgage on the property, and Neuffer argued that since the real transaction – a mortgage – was not recorded, his properly recorded mortgage had priority.  *Ruggles*, 38 Tenn. at 142.  The Tennessee Supreme Court disagreed and affirmed the lower court's ruling in favor of Moffitt, holding that "all other things being right, a party

23

is not deprived of the benefit of his security because the instrument registered is in the form of a deed absolute, instead of a mortgage, but that when a parol defeasance is shown, it only has the effect to reduce the title to that which was intended by the parties - that is, a security for debts, instead of a sale of the property." *Ruggles*, 38 Tenn. at 145.  In further explanation, the court stated

> [t]he great object of the registration laws is to give notice of the position and change of titles to property, as well as all incumbrances upon it.  This is necessary for the protection of purchasers, and the information of creditors.  Is not the object as well accomplished by the registration of a deed in fee, when the real transaction is only a mortgage, as if it had been in the form of the latter?  Certainly a subsequent purchaser cannot object because he has notice that the whole estate has passed, instead of the imposition of an incumbrance upon it.  So, one about to deal with the former owner, has a stronger warning against extending credit.

*Ruggles*, 38 Tenn. at 143-44.

This reasoning was further expanded by the second case cited by the Plaintiff, *Blizzard v. Craigmiles*, 75 Tenn. 693 (Tenn. 1881), in which the Tennessee Supreme Court was called upon to determine the true nature of a deed of conveyance to a junior lien creditor.  The *Blizzard* court examined the transaction as a whole, noting that the deed provided for reconveyance of the property to Craigmiles by Hays if the full sum of an outstanding debt owed by Hays was paid, that during the two year payment period Craigmiles would not attempt to collect the debt owed by Hays, and that the $5,000.00 consideration for the conveyance was to be applied to satisfy the indebtedness owed.  *Blizzard*, 75 Tenn. at 695-96.  Based upon those facts, the Tennessee Supreme Court held:

> The contract being in writing, in the form of an absolute deed, a defeasance, and a lease, the intention of the parties must be gathered from the face of the papers.  The deed is absolute, but the consideration is part of the pre-existing debt, not any new consideration.  The contract to re-convey is conditioned upon the payment of the entire pre-existing debt, which would amount at the expiration of the time of indulgence to double the recited consideration, and therefore shows that the parties valued the land at much more than the price recited.  The lease is for an annual rent of $70, exactly ten per cent, on the principal of the pre-existing debt.  The papers do

24

not show the surrender of any of the evidences of the debt, nor any contemporaneous entry of a credit of the stipulated price on the securities held. These indicia are all those of a mortgage, not of an absolute sale, and demonstrate that the transaction, while in form a sale, was in substance a security to the grantee, not merely for his old debt, but for the debt assumed by him due to the prior mortgagee.

*Blizzard*, 75 Tenn. at 698-99 (citations omitted).

The Plaintiff also relies upon *Harmon v. Faucette*, 8 Tenn. App. 137 (Tenn. Ct. App. 1928), in which the Tennessee Court of Appeals reviewed a determination by the lower court that a deed purporting to convey property outright in connection with a past due loan was an absolute sale for $3,500.00, whereby the appellee bank owed the balance of the purchase price in the amount of $2,175.00 after crediting the $1,325.00 debt owed it by the appellant. After a review of the facts of the case, the court of appeals found that "the conveyance, notwithstanding it was absolute on its face, was in law and equity a mortgage," based in large part upon the fact that the appellant was given a time certain to pay off the indebtedness owed to the appellee bank and still retain the property, and as such, the appellee bank should have offered the appellant's property at a public sale rather than sell it in a private sale, crediting the amount of the debt and paying any surplus over to the appellant. *Harmon*, 8 Tenn. App. at 140. The court opined:

In the equitable view, a mortgage may be described in general terms as an assurance or pledge of or charge upon property, real or personal, for an antecedent, present or future debt or loan, as security for and redeemable upon the payment of such debt. The fundamental principle of equity is, that whenever a conveyance of land is given for the purpose of securing payment on an existing debt, it is a mortgage. If the fact is established that a debt exists between the parties and the transaction did not amount to a present payment, satisfaction, or discharge of that debt, to recognize it as still continuing, to be paid at some future time, and was intended to be a security for such payment, then the instrument is always regarded in equity as a mortgage, whatever be its form.

25

*Harmon*, 8 Tenn. App. at 141 (citation omitted).  In its argument that the Conditional Extension

Agreement, Escrow Agreement, and Quit Claim Deeds collectively constituted a mortgage, the

Plaintiff focuses upon the following statement by the *Harmon* court:

> The criterion whether a deed absolute on its face is in fact a mortgage is placed upon
> the question of whether the debt is discharged.  The proof in this case shows that
> upon the day of the sale the cash payment was credited upon Mr. Harmon's note, and
> later in the month the note was cancelled and marked paid and returned to Mr.
> Harmon.  This act, together with the admissions that the deed was subject to be
> returned to Mr. Harmon on the payment of the debt up until September 1st
> constitutes it, without a doubt, a mortgage up until September 1st, and the rule of law
> is once a mortgage, always a mortgage.

*Harmon*, 8 Tenn. App. at 140-41.[8]

The court does not disagree that each of the foregoing cases relied upon by the Plaintiff

stands for the proposition that a document, which is, on its face, a deed of absolute conveyance, may,

in fact, be a mortgage obligation in disguise.  However, the facts of those cases are clearly

distinguishable from the facts in this one and the Plaintiff's reliance is misguided for one striking

difference – the Conditional Extension Agreement, Escrow Agreement, and unrecorded Quit Claim

Deeds delivered into escrow did not purport to, nor did they convey, title in the Webb Mountain

Property to the Defendants on March 27, 2007.  Instead, transfer or conveyance of absolute title to

the Webb Mountain Property was only accomplished through recordation of the Quit Claim Deeds

on September 18, 2007, after they had been released from escrow.

---

[8] The Plaintiff also relies on several cases from other states; however, since the outcome of this Count depends
solely upon an interpretation of Tennessee law as applied in conjunction with the Bankruptcy Code, the court does not
find those cases particularly relevant, persuasive, or instructive, especially in light with the court's agreement with the
basic analysis that a deed of conveyance, while absolute on its face, may constitute an equitable mortgage based upon
the circumstances.

The Conditional Extension Agreement was simply that, an agreement that served to extend the Plaintiff's obligations under the Promissory Notes:

> The parties hereto agree that upon the execution and delivery of this Agreement and the Quit Claim Deeds in escrow as contemplated herein, the parties agree on an extension of the Borrower's obligations under said Promissory Notes. However, the parties agree that the foreclosure proceedings already filed by Note Holders shall remain in full force and effect, but that the sale date for said foreclosures shall be adjourned until after June 25, 2007, and in no event shall any of said sale dates occur on or before June 25, 2007.
>
> . . . .
>
> This Agreement shall be deemed an amendment and extension of the Promissory Notes as provided herein.

AMD. COMPL., EX. 1 at 1-2. Following default under the Promissory Notes and the commencement of foreclosure proceedings, the Plaintiff, through Mr. Collier, contacted the Defendants and sought a workout under which the Defendants would not proceed with their scheduled foreclosure of the Webb Mountain Property and the Plaintiff would have additional time to cure the default. The Plaintiff voluntarily entered into the Conditional Extension Agreement, voluntarily agreed to the Escrow Agreement, and voluntarily executed the Quit Claim Deeds to be placed into escrow as part of the workout arrangement. At all times during this negotiation, the Plaintiff, whose sole member, Mr. Collier, is, by his own admission, a sophisticated commercial borrower with extensive experience in commercial real estate development, operation, and management, was represented by counsel. As established by the documents themselves, the Conditional Extension Agreement, Escrow Agreement, and escrowed Quit Claim Deeds were executed solely as a workout, stemming from the original Promissory Notes and Deeds of Trust following the Plaintiff's default, and at no

time did the parties, Mr. Collier included, intend those documents to be anything else.[9] *See* Sept. 3, 2007 Collier Depo. at p.41, lines 8-23.

In sum, under the terms of the Conditional Extension Agreement and Escrow Agreement, the Plaintiff was given additional time to cure its continuing default on the Promissory Notes without the threat of a date-certain, impending foreclosure sale, and in exchange, the Plaintiff executed the Quit Claim Deeds, which were simply deeds in lieu of foreclosure to be placed into escrow during the agreed-upon forbearance period.  Had the Plaintiff cured the default prior to or on the June 25, 2007 deadline, the conditions of the Conditional Extension Agreement would have been satisfied, and pursuant to those conditions and the Escrow Agreement, the escrowed Quit Claim Deeds would have been returned to the Plaintiff, and the previously scheduled and postponed foreclosure sale would have been canceled, as any authorization to foreclose would have been nullified by the cure.

The default was not, however, cured by the June 25, 2007 deadline and had the Plaintiff not filed its bankruptcy case, the Defendants would have had the option, under the terms of the Conditional Extension Agreement, to either record the escrowed Quit Claim Deeds or reschedule the suspended foreclosure sale.  Either way, the end result would have been the absolute conveyance of title in the Webb Mountain Property to the Defendants.  Nothing in any of the documents at issue, or in the record itself, remotely hints at the prospect of the Plaintiff being able to retain or remain

---

[9] Moreover, "[t]he parol evidence rule does not permit contracting parties to 'use extraneous evidence to alter, vary, or qualify the plain meaning of an unambiguous written contract[,]'" *Staubach Retail Servs.-S.E., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 525 (Tenn. 2005) (quoting *GRW Enters. v. Davis*, 797 S.W.2d 606, 610 (Tenn. Ct. App. 1990)), and "testimony of prior or contemporaneous oral agreements 'is inadmissible to contradict, vary, or alter a written contract where the written instrument is valid, complete, and unambiguous, absent fraud or mistake or any claim or allegation thereof.'" *First Citizens Bank of Cleveland v. Cross*, 55 S.W.3d 564, 569 (Tenn. Ct. App. 2001) (quoting *Airline Constr., Inc. v. Barr*, 807 S.W.2d 247, 259 (Tenn. Ct. App. 1990)).

in possession of the Webb Mountain Property unless it satisfied its obligations under the Promissory Notes on or before June 25, 2007, or that there was any subsequent event in which the Defendants would be required to re-convey title in the Webb Mountain Property back to the Plaintiff following recordation of the escrowed Quit Claim Deeds or a completed foreclosure sale.  In fact, under the terms of the Conditional Extension Agreement and Escrow Agreement, the only conveyance of the title to the Webb Mountain Property that was to take place was in the event that the Plaintiff failed to cure its default and the Defendants recorded the Quit Claim Deeds, in which case, the Plaintiff's obligations to the Defendants under the Promissory Notes would then be discharged due to their nonrecourse nature.

For the above reasons, the court finds that there are no genuine issues of material fact.  The Conditional Extension Agreement, Escrow Agreement, and Quit Claim Deeds delivered into escrow do not, either collectively or individually, constitute a mortgage, equitable or otherwise, upon the Webb Mountain Property, and the Defendants are entitled to summary judgment with respect to Count VII.  Count VII of the Amended Complaint shall be dismissed.

## B

## COUNT VIII

The Plaintiff next seeks a summary judgment under Count VIII of the Amended Complaint declaring that the Defendants' failure to record the Conditional Extension Agreement and Escrow Agreement in the Office of the Sevier County Register of Deeds constitutes an unperfected mortgage, equitable mortgage, or other real estate transaction securing obligations owed the Defendants by the Plaintiff.  However, the court's determination at Section A herein resolving the

29

parties' respective summary judgment motions regarding Count VII that the Conditional Extension Agreement, Escrow Agreement, and unrecorded Quit Claim Deeds do not, collectively or individually, constitute a mortgage, equitable or otherwise, is dispositive of the recording issue.[10] The Defendants are, accordingly, entitled to a summary judgment dismissing Count VIII.

## C

### COUNT X

The Plaintiff finally seeks summary judgment under Count X of the Amended Complaint that 11 U.S.C. § 544(b), the Bankruptcy Code's "strong arm" provision, allows it, as Debtor-in-Possession, to avoid the Defendants' unperfected liens on the Webb Mountain Property attributable to the Defendants' failure to record the Conditional Extension Agreement and Escrow Agreement. Once again, however, the court's resolution of Count VII in Section A herein in favor of the Defendants is equally dispositive of Count X. The Defendants are entitled to a summary judgment dismissing Count X.

---

[10] Notwithstanding the court's determination that the Conditional Extension Agreement, Escrow Agreement, and Quit Claim Deeds placed into escrow did not constitute a mortgage, either individually or collectively, the fact remains that the Deeds of Trust recorded with the Sevier County Register of Deeds on March 28, 2006, securing the Plaintiff's obligations to the Defendants under the Promissory Notes, were not released on March 27, 2007, and continued to encumber the Webb Mountain Property. Furthermore, their express terms provide that all modifications, extensions, and renewals of the Promissory Notes – which clearly includes the Conditional Extension Agreement, Escrow Agreement, and unrecorded Quit Claim Deeds – fall within the scope of the Deeds of Trust without affecting the priority of the Deeds of Trust. *See* COLLIER AFF. COLL. EX. A; WHALEY AFF. COLL. EX. A.

# IV

## MOTION TO DISMISS ADVERSARY PROCEEDING

With respect to the remainder of the counts set forth in the Amended Complaint, the Defendants seek dismissal pursuant to Rule 12(b) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6) (made applicable in adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure). When faced with a motion to dismiss under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand, C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). Although all factual allegations are accepted as true, the court is not required to accept legal conclusions or unwarranted factual inferences as true. *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 533 (6th Cir. 2002). Instead, the focus should be upon "whether the plaintiff has pleaded a cognizable claim[,]" *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 452 (6th Cir. 2003), and the complaint contains "either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007)).

Additionally, the court should not rely upon any documents other than the pleadings, *Stangel v. I.R.S. (In re Stangel)*, 222 B.R. 289, 291 (Bankr. N.D. Tex. 1998), although it may rely upon public records or other document appropriately encompassed by judicial notice set forth in Federal

Rule of Evidence 201. *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*,

336 F.3d 495, 501 (6th Cir. 2003). Nevertheless, Rule 12(d) provides:

> (d) Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule
> 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the
> court, the motion must be treated as one for summary judgment under Rule 56. All
> parties must be given a reasonable opportunity to present all the material that is
> pertinent to the motion.

FED. R. CIV. P. 12(d). Pursuant to Rule 12(d), a motion to dismiss under Rule 12(b)(6) is

"converted" to a motion for summary judgment governed by Rule 56 when the parties submit

material beyond the pleadings that the court considers in its determination. *Higgason v. Stephens*,

288 F.3d 868, 874 (6th Cir. 2002); *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 533

(6th Cir. 2002) (*citing Soper v. Hoben*, 195 F.3d 845, 850 (6th Cir. 1999)). "Material outside the

pleadings includes affidavits, affirmative defenses, and judicial notice of the record or transcripts

from prior court proceedings." *Fernandez v. GE Capital Mortgage Servs., Inc. (In re Fernandez)*,

227 B.R. 174, 179-80 (B.A.P. 9th Cir. 1998); *see also 50 Pine Co., LLC v. CapitalSource Fin., LLC

(In re 50 Pine Co., LLC)*, 317 B.R. 276, 281 (Bankr. S.D.N.Y. 2004) ("[W]hen a party attaches to

its motion to dismiss documents which are extrinsic to the complaint, the court must either exclude

such documents from consideration or convert the motion to a motion for summary judgment under

Rule 56.").

The Amended Complaint sets forth an additional ten counts upon which the Plaintiff seeks

relief. Here, both parties have submitted Affidavits and exhibits outside the pleadings, and the court

will consider the remaining issues raised in the Motion to Dismiss Adversary Proceeding under the

summary judgment standard previously discussed with respect to the Motion for Summary Judgment

and Cross Motion for Summary Judgment.[11]  Several of the counts will be addressed collectively because they are based upon the same essential facts and case law, or are otherwise related.

## A

## COUNTS I, II, AND V

In Count I, the Plaintiff alleges that the Quit Claim Deeds are null and void because they were released from escrow and recorded even though the September 17, 2007 Dismissal Order was not, at the time, final and, according to the Plaintiff, never became final due to the Plaintiff's subsequent appeal and reversal by the United States District Court, and it seeks a declaratory judgment to that effect as authorized by 28 U.S.C. § 2201.[12]  Relatedly, in Count II, the Plaintiff alleges that but for the entry of the Dismissal Order, the Quit Claim Deeds would never have been released from escrow and/or recorded, and it requests an equitable determination, pursuant to 28 U.S.C. § 1651 (2006) and/or 11 U.S.C. § 105(a) (2005), that the Quit Claim Deeds violated the automatic stay and/or are null and void or avoidable.  Counts I and II also implicate the issues raised in Count V, wherein the Plaintiff argues that the Federal Rules of Bankruptcy Procedure, including Rule 8005, did not offer it adequate time to obtain a stay from the effects of the Dismissal Order, which terminated the automatic stay of 11 U.S.C. § 362(a) (2005), thereby denying the Plaintiff procedural and substantive due process, constituting a deprivation of its constitutionally protected property interests.

---

[11] To distinguish this motion from the Cross Motion For Summary Judgment, the court will continue to refer to it as the Motion to Dismiss Adversary Proceeding.

[12] *See supra* n. 7.

As of the commencement of the Plaintiff's bankruptcy case on June 25, 2007, all of its legal and equitable interests in property, including the Webb Mountain Property, formed the Plaintiff's bankruptcy estate.  *See* 11 U.S.C. § 541(a) (2005).  During the pendency of the case, the Defendants were precluded from recording the Quit Claim Deeds by the automatic stay, which prohibited them from "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" during the pendency of the bankruptcy case.  11 U.S.C. § 362(a)(3).  It is elementary that "the [automatic] stay comes into existence 'automatically' and 'immediately' upon the filing of a petition in bankruptcy[,]" *Shaw v. Ehrlich*, 294 B.R. 260, 268 (W.D. Va. 2003), and its purpose is "to provide the debtor a 'breathing spell' from collection efforts and to shield individual creditors from the effects of a 'race to the courthouse,' thereby promoting the equal treatment of creditors."  *In re Printup*, 264 B.R. 169, 173 (Bankr. E.D. Tenn. 2001).  Actions taken in violation of the automatic stay are "invalid and voidable and shall be voided absent limited equitable circumstances."  *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir. 1993).

The automatic stay terminated by operation of law, however, when the Plaintiff's case was dismissed on September 17, 2007, pursuant to 11 U.S.C. § 362(c)(2) (2005).[13]  *See, e.g., Singleton*

---

[13] Section 362(c) provides in material part:

    (c)  . . .

        (1)  the stay of an act against property of the estate . . . continues until such property is no longer property of the estate;

        (2)  the stay of any other act under subsection (a) of this section continues until the earliest of—

(continued...)

*v. Countrywide Home Loans, Inc. (In re Singleton)*, 358 B.R. 253, 256 (D.S.C. 2006) ("Section 362(c) provides that the stay of such proceedings 'continues until such property is no longer property of the estate.'  Thus, when the petition giving rise to the stay is dismissed, the stay terminates immediately, and creditors may proceed with foreclosure."); *Lomagno v. Salomon Bros. Realty Corp. (In re Lomagno)*, 320 B.R. 473, 478 (B.A.P. 1st Cir. 2005) ("[Section] 362(c)(2)(B) states unambiguously that the automatic stay terminates when 'the case is dismissed.'. . . Such immediate termination of the automatic stay is supported by § 349(b)(3)[14], which provides that the dismissal of a case revests the property of the estate in the entity in which the property was vested immediately before the commencement of the case.").

Following dismissal, the Defendants were free to proceed with any action against the Plaintiff barring any stay pending appeal.  The opportunity to obtain a stay of proceedings pending appeal arises under Rule 8005, which provides in material part:

---

[13](...continued)

> (A)  the time the case is closed;
>
> (B)  the time the case is dismissed; or
>
> (C)  if the case is . . . a case under chapter . . . 11 . . . of this title, the time a discharge is granted or denied[.]

11 U.S.C. § 362(c).

[14]  Section 349, entitled "Effect of dismissal," provides in material part:

> (b)  Unless the court, for cause, orders otherwise, a dismissal of a case . . .
>
> . . . .
>
> (3)  revests the property of the estate in the entity in which such property was vests immediately before the commencement of the case under this title.

11 U.S.C. § 349 (2005).

35

> A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. Notwithstanding Rule 7062 but subject to the power of the district court . . ., the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court . . ., but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge. The district court . . . may condition the relief it grants under this rule on the filing of a bond or other appropriate security with the bankruptcy court.

FED. R. BANKR. P. 8005. When making a determination whether or not to grant a motion for a stay pending appeal, the bankruptcy court generally looks to the following factors:

> [W]e consider the same four factors that are traditionally considered in evaluating the granting of a preliminary injunction. These well-known factors are: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.

*Stephenson v. Rickles Elecs. & Satellites (In re Best Reception Sys., Inc.)*, 219 B.R. 988, 992 (Bankr. E.D. Tenn. 1998) (quoting *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

The Plaintiff's successful prosecution of Count I is dependent upon its assertion that the Dismissal Order was not a "final order" when the Quit Claim Deeds were released from escrow and recorded, a position that the Plaintiff has maintained since immediately following entry of the Dismissal Order, as evidenced by a facsimile transmission (fax) sent to the Escrow Agent on September 17, 2007, advising the following:

> This afternoon the Bankruptcy Court entered an Order granting the Motion to Dismiss the Chapter 11 case, filed by Mr. Whaley and others on August 10, 2007. The Quitclaim Deeds held in escrow should not be recorded nor released unless and

36

until the Order is final and unappealable.  FRBP 8002 allows ten (10) days in which
to file a Notice of Appeal.  Please advise if you have any questions.

AMD. COMPL. EX. 3.

There are two substantially different, yet inner-related, definitions of "finality" at play here: finality for the purposes of appeal and finality for the purposes of enforcement.  First is the question of whether the Dismissal Order was "final" and, therefore, appealable by right to the district court pursuant to 28 U.S.C. § 158(a) (2005).  "For purposes of appeal, an order is final if it 'ends the litigation on the merits and leaves nothing for the courts to do but execute the judgment[,]'" *Jefferson County Bd. of County Comm'rs v. Voinovich (In re The V Cos.)*, 292 B.R. 290, 292 (B.A.P. 6th Cir. 2003) (quoting *Midland Asphalt Corp. v. United States*, 109 S. Ct. 1494, 1497 (1989)).  The Sixth Circuit has held that "where an order in a bankruptcy case 'finally disposes of discrete disputes within the larger case,' it may be appealed immediately," *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers (In re Dow Corning Corp.)*, 86 F.3d 482, 488 (6th Cir. 1996) (quoting *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444 (1st Cir. 1983)), and the case law is clear that "[a]n order dismissing a bankruptcy case is a final order."  *Badalyan v. Holub (In re Badalyan)*, 236 B.R. 633, 635 (B.A.P. 6th Cir. 1999); *see also Wellman v. Salt Creek Valley Bank (In re Wellman)*, 337 B.R. 729 (Table), 2006 Bankr. LEXIS 83, at *2, 2006 WL 189985, at *1 (B.A.P. 6th Cir. Jan. 26, 2006).

The heart of the Plaintiff's argument that the Dismissal Order was not final, however, centers around finality for the purposes of enforcement.  This connotation is derived from Rule 62 of the Federal Rules of Civil Procedure, which provides, in material part:

(a) **Automatic stay;** . . . Except as stated in this rule, no execution may issue on a judgment, nor may proceedings be taken to enforce it, until 10 days have passed after its entry. . . .

(b) **Stay Pending the Disposition of a Motion.**  On appropriate terms for the opposing party's security, the court may stay the execution of a judgment – or any proceedings to enforce it – pending disposition of any of the following motions:

. . . .

> (2) under Rule 52(b), to amend the findings or for additional findings; [and]

> (3) under Rule 59, for a new trial or to alter or amend a judgment[.]"

FED. R. CIV. P. 62(b).

The stay of proceedings to enforce a judgment provided by Rule 62 applies in adversary proceedings, which are governed by Part VII of the Federal Rules of Bankruptcy Procedure.  *See* FED. R. BANKR. P. 7062 ("Rule 62 F.R.C.P. applies in adversary proceedings.").  The Motion to Dismiss Bankruptcy Case, filed in the Plaintiff's case pursuant to 11 U.S.C. § 1112(b) (2005), was not, however, an adversary proceeding but a contested matter.  As such, it was governed by Federal Rule of Bankruptcy Procedure 9014,[15] which dictated the form and service thereof, and provides in material part:

(a) **Motion**.  In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought.  No response is required under this rule unless the court directs otherwise.

. . . .

(c) **Application of Part VII rules**.  Except as otherwise provided in this rule, and unless the court directs otherwise, the following rules shall apply: 7009, 7017, 7021,

---

[15]  *See* FED. R. BANKR. P. 1017(f)(1) ("Rule 9014 governs a proceeding to dismiss or suspend a case, or to convert a case to another chapter[.]").

7025, 7026, 7028-7037, 7041, 7042, 7052, 7054-7056, 7064, 7069, and 7071. . . .
The court may at any stage in a particular matter direct that one or more of the other
rules in Part VII shall apply.  The court shall give the parties notice of any order
issued under this paragraph to afford them a reasonable opportunity to comply with
the procedures prescribed by the order.

FED. R. BANKR. P. 9014.

Rule 7062, incorporating Rule 62 into adversary proceedings, is not listed among the Part

VII Rules applying to contested matters.  Rule 7062 was, in fact, expressly omitted from application

in contested matters under Rule 9014 by the 1999 amendments.  Confirmation of the Judicial

Conference's intention to omit Rule 7062 is specifically addressed in the advisory committee notes:

> This rule is amended to delete Rule 7062 from the list of Part VII rules that
> automatically apply in a contested matter.  Rule 7062 provides that Rule 62
> F.R.Civ.P., which governs stays of proceedings to enforce a judgment, is applicable
> in adversary proceedings.  The provisions of Rule 62, including the ten-day automatic
> stay of the enforcement of a judgment provided by Rule 62(a) and the stay as a matter
> of right by posting a supersedeas bond provided in Rule 62(d), are not appropriate for
> most orders granting or denying motions governed by Rule 9014.
>
> Although Rule 7062 will not apply automatically in contested matters, the amended
> rule permits the court, in its discretion, to order that Rule 7062 apply in a particular
> matter, and Rule 8005 gives the court discretion to issue a stay or any other
> appropriate order during the pendency of an appeal on such terms as will protect the
> rights of all parties in interest.  In addition, amendments to Rules 3020, 4001, 6004,
> and 6006[16] automatically stay certain types of orders for a period of ten days, unless
> the court orders otherwise.

FED. R. BANKR. P. 9014(b) ADV. COMM. NOTES.

---

[16] Rules 3020, 4001, 6004, and 6006 apply a ten-day stay to orders confirming a Chapter 9 or 11 plan (Rule
3020(e)), orders granting a motion for relief from the automatic stay (Rule 4001(a)(3)), orders authorizing the use, sale,
or lease of property of the estate other than cash collateral (Rule 6004(g)), and orders authorizing a trustee to assign an
executory contract or unexpired lease (Rule 6006(d)).  Each of these Rules, utilizing the identical language, provides that
the underlying order is "stayed until expiration of 10 days after the entry of the order, unless the court orders otherwise."
FED. R. BANKR. P. 3020(a), 4001(a)(3), 6004(g), and 6006(d).

Accordingly, once the Dismissal Order was entered on September 17, 2007, there was no longer any stay in effect – either statutory or by procedural rule – preventing the Defendants from enforcing the terms of the Conditional Extension Agreement and the Escrow Agreement, including the exercise of their rights to record the Quit Claim Deeds. *See, e.g., In re Hanson*, 282 B.R. 240, 245 (Bankr. D. Colo. 2002) ("[N]either Rule 7062 nor Section 362 provide a stay in a bankruptcy case which has been dismissed."). As such, the September 17, 2007 Dismissal Order was a "final order" not only in the sense that it was an appealable order under the Bankruptcy Rules, but also in the sense that there was no longer a prohibition under the Bankruptcy Code against the release of the Quit Claim Deeds from escrow and their recordation by the Escrow Agent on September 18, 2007. The Plaintiff's September 17, 2007 fax to the Escrow Agent stating otherwise was wrongly premised.

Although the automatic stay terminated by operation of law upon entry of the Dismissal Order, it went into effect once again when the Plaintiff's case was reinstated following its successful appeal of the Dismissal Order. In Count II, the Plaintiff asks the court to use its equitable powers to retroactively apply the automatic stay during the interim period between dismissal on September 17, 2007, and reinstatement on February 8, 2008, arguing that because the dismissal was reversed, all actions taken during that time have been invalidated and should be set aside or voided. As the authority for its request in Count II, the Plaintiff cites to 28 U.S.C. § 1651, otherwise known as the All Writs Act, which provides that the court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law[,]" and to 11 U.S.C. § 105(a), defining the inherent equitable powers of the bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11] . . .

40

[and] tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

"The All Writs Act enables federal courts to issue such commands 'as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.'" *United States v. Perry*, 360 F.3d 519, 533 (6th Cir. 2004) (quoting *United States v. N.Y. Tel. Co.*, 98 S. Ct. 364, 372 (1977)). However, "[t]he remedy under 28 U.S.C. § 1651 'is a drastic one, to be invoked only in extraordinary situations.'" *Lofton v. U.S. Dist. Ct. for E. Dist. of Ark.*, 882 F.2d 300, 301 (8th Cir. 1989) (quoting *In re Jackson County, Mo.*, 834 F.2d 150, 151 (8th Cir. 1987)). Correspondingly, 11 U.S.C. § 105(a) provides bankruptcy courts with the authority to take whatever action is appropriate and necessary to exercise their jurisdiction, but it "may not be used to circumvent the Bankruptcy Code, and does not create a private cause of action unless it is invoked in connection with another section of the Bankruptcy Code." *In re Rose*, 314 B.R. 663, 681 n.11 (Bankr. E.D. Tenn. 2004); *see also Yancey v. Citifinancial, Inc. (In re Yancey),* 301 B.R. 861, 868 (Bankr. W.D. Tenn. 2003) ("[Section] 105(a) cannot, standing alone, create a private right of action."). Instead, the court may only use § 105(a) "in furtherance of the goals of the [Bankruptcy] Code[,]" *Childress v. Middleton Arms, L.P. (In re Middleton Arms, L.P.)*, 934 F.2d 723, 725 (6th Cir. 1991).

Congress intended for dismissal of a bankruptcy case to "undo the bankruptcy case as far as practicable, and restore all property rights to the position in which they were found at the commencement of the case[,]" *Nicholson v. Nagel (In re Nagel)*, 245 B.R. 657, 662 (D. Ariz. 1999) (quoting *Weston v. Rodriguez (In re Weston)*, 110 B.R. 452, 456 (E.D. Cal. 1989)), and

"[t]ermination of the automatic stay at the moment a dismissal order is entered is the quickest and most effective means of restoring debtors and creditors to their status quo positions prior to the case in bankruptcy." *Shaw*, 294 B.R. at 274-75.  Furthermore, "even if a case is reinstated, the automatic stay is not retroactively reinstated with respect to creditor conduct that occurred between the dismissal and the reinstatement."  *Frank v. Gulf States Fin. Co. (In re Frank)*, 254 B.R. 368, 374 (Bankr. S.D. Tex. 2000); *see also Lomagno*, 320 B.R. at 479 ("Courts deciding the issue have generally held that the reinstatement of a dismissed bankruptcy case does not retroactively reimpose the automatic stay."); *Singleton*, 358 B.R. at 261 ("[T]his court is unaware of any authority that grants the bankruptcy court power to retroactively *impose* a stay.").

> The decisional law is clear that when a case is dismissed, the stay is terminated, and if the case is reinstated, the stay is not retroactively reimposed . . ., and actions taken by creditors during such a dismissal are and remain valid.  A contrary result would have highly disruptive and unintended consequences, creating uncertainty among creditors who innocently seek to enforce their rights after a dismissal order is entered.

*Moore v. Branch Banking & Trust (In re Moore)*, 2006 Bankr. LEXIS 4164, at *25, 2006 WL 4468609, at *8 (Bankr. D. Md. Dec. 29, 2006).

Nevertheless, "[a]n exception to the general rule is emerging from the case law.  Several courts have concluded that reinstatement of a dismissed bankruptcy case does not affect the validity of a creditor's actions taken during the period the case was dismissed, *unless there was a violation of due process rights.*"  *Lomagno*, 320 B.R. at 480.  The Plaintiff focuses upon the time period between entry of the Dismissal Order and the recording of the Quit Claim Deeds to form the basis of its averments in Count V that it was not afforded substantive and procedural due process following entry of the Dismissal Order because, as argued in its Response to the Amended Motion to Dismiss Adversary Proceeding, it "did not have a meaningful time or opportunity to (i) file a

42

motion [to stay the effect of the Dismissal Order] pursuant to FRBP 8005, (ii) present the motion to

the Bankruptcy Court, and if the motion was denied by the Bankruptcy Court following due

deliberation, [or] (iii) present the motion and the reasons for its denial by the Bankruptcy Court to

the District Court and have the motion ruled upon[,]" before the Defendants had retrieved and

recorded the Quit Claim Deeds.[17]

Under the Fifth Amendment, "[n]o person shall . . . be deprived of . . . property, without due

process of law." U.S. CONST. amend. V. Due process consists of "two separate constitutional

doctrines: procedural due process and substantive due process." *Police Benevolent Ass'n of the N.Y.*

*State Troopers v. Bennett*, 477 F. Supp. 2d. 534, 544 (N.D.N.Y. 2007). "The fundamental elements

of procedural due process are notice and an opportunity to be heard." *Yellow Freight Sys., Inc. v.*

*Martin*, 954 F.2d 353, 357 (6th Cir. 1992). "The key inquiry in such circumstances is whether the

notice is 'reasonably calculated, in all the circumstances, to appraise interested parties of the

pendency of the action and afford them an opportunity to present their objections.'" *Cash v.*

*Hamilton County Dep't of Adult Prob.*, 388 F.3d 539, 544 (6th Cir. 2004) (quoting *Mullane v. Cent.*

*Hanover Bank & Trust Co.*, 70 S. Ct. 652, 657 (1950)). Additionally, "[p]rocedural due process

rights attach whenever a petitioner asserts a protected liberty or property interest[, and to] establish

a protected liberty or property interest, the petitioner must demonstrate that the Constitution or a

federal or state statute grants him a protected right." *Camara v. Gonzales*, 166 Fed. Appx. 840, 843,

2006 U.S. App. LEXIS 3827, at *9, 2006 WL 357883, at *3 (6th Cir. Feb. 16, 2006).

---

[17] The Plaintiff does not aver that it was not afforded due process with respect to the September 11, 2007
hearing on the Motion to Dismiss Bankruptcy Case filed by the Defendants on August 10, 2007.

43

In sum, the Plaintiff argues that because Rule 9014 does not include the stay provisions contained in Rule 7062, neither of those Rules nor Rule 8005 provided the Plaintiff with an adequate opportunity to be heard following the termination of the automatic stay caused by the dismissal of its bankruptcy case.  In support of this contention, the Plaintiff relies upon two cases.  In the first, *Great Pac. Money Markets, Inc. v. Krueger (In re Krueger)*, 88 B.R. 238 (B.A.P. 9th Cir. 1988), the court affirmed the setting aside of a foreclosure sale that took place during the period intervening between the dismissal of the case and its subsequent reinstatement, finding that the debtors were denied due process because they were not informed that their confirmation hearing had been continued, resulting in their non-appearance and the dismissal of the case.  Stating that "[a]n order is void if it is issued by a court in a manner inconsistent with the due process clause of the Fifth Amendment[,]" the court held that "because the order dismissing the case was void, the stay was continuously in effect from the date the petition was filed.  Therefore, the foreclosure sale was in violation of the stay."  *Krueger*, 88 B.R. at 241.

The second case relied upon by the Plaintiff is *In re Acosta*, 181 B.R. 477 (Bankr. D. Ariz. 1995), in which the court granted a motion to set aside a trustee's sale that occurred between the dismissal of the debtors' case and reinstatement just over a month later, finding that the creditor had failed to provide the debtors with notice of its rescheduled trustee's sale in accordance with Arizona law and while a motion for reinstatement of the case was pending.  The *Acosta* court held that "whether or not a motion for reinstatement had been filed, because of the intervening bankruptcy, [the creditor] had a duty to provide the Debtors with *actual notice* of the rescheduled Trustee's Sale date even after dismissal of the Debtors' petition."  *Acosta*, 181 B.R. at 479.

44

The Plaintiff's argument that the Federal Rules of Bankruptcy Procedure do not allow for a meaningful time to file a motion to stay execution following entry of the Dismissal Order cannot be sustained. The mechanics under Rule 9014(c) for obtaining a stay under Rule 7062 are in place and were available to the Plaintiff at any stage of the contested matter prior to entry of the Dismissal Order. That those steps were not taken in the face of a potential dismissal of its bankruptcy case does not evidence and cannot be labeled as a deprivation of the Plaintiff's due process rights.

As previously discussed, Bankruptcy Rule 7062 incorporates Rule 62 of the Federal Rules of Civil Procedure into adversary proceedings.[18] Rule 62 provides a ten-day stay of execution upon a final judgment or order; however, Rule 7062 is not applicable in contested matters, including motions to dismiss. *See, e.g., Frank*, 254 B.R. at 374 ("An order dismissing a case is not subject to the limitations of FRBP 7062. It is effective immediately upon entry and the stay terminates immediately."). Accordingly, there is no ten-day stay following entry of an order dismissing a debtor's bankruptcy case unless a party expressly asks the court to apply the rule and the court grants the request. At any time prior or subsequent to the September 11, 2007 trial on the Motion to Dismiss Bankruptcy Case and before entry of the Dismissal Order, or at any time immediately following entry of the Dismissal Order but prior to the recording of the Quit Claim Deeds, the Plaintiff could have, as expressly authorized by Rule 9014(c), requested that the court apply Rule 7062. No such request was made, despite the Plaintiff's knowledge that there were only two potential outcomes of the September 11, 2007 trial: the Defendants' August 10, 2007 Motion to

---

[18] An adversary proceeding, as contrasted with a contested matter, is governed by Part VII of the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 7001. Adversary proceedings are commenced, as are civil actions in the United States District Court, by the filing of a complaint. *See* Fed. R. Bankr. P. 7003 ("Rule 3 F.R.C.P. applies in adversary proceedings").

45

Dismiss Bankruptcy Case would either be denied, in which event the Plaintiff's bankruptcy case would proceed without interruption, or it would be granted and the Plaintiff's bankruptcy case would be dismissed.  In the event the Defendants were successful and the Plaintiff's bankruptcy case was dismissed, the Plaintiff was aware that the automatic stay would immediately be terminated as a matter of law.[19]

Furthermore, asking for application of Rule 7062 was not the Plaintiff's sole remedy following entry of the Dismissal Order.  Upon receipt of the Dismissal Order instantaneously upon its entry on September 17, 2007, by way of the court's electronic case filing system,[20] the Plaintiff could have immediately filed a notice of appeal under Rule 8001 of the Federal Rules of Bankruptcy Procedure accompanied by a motion for a stay pending appeal under Rule 8005 and requested an emergency hearing.  Once again, the Plaintiff was aware that the September 11, 2007 trial would produce one of two outcomes and that dismissal was one of them.  It had six days between the trial and the entry of the Dismissal Order, and it could have, during that time, taken steps to ensure that, in the event dismissal occurred, an appeal and motion for stay pending appeal were filed before the Defendants had an opportunity to exercise their rights in the Webb Mountain Property.  Similarly, the Plaintiff could have commenced an action in the state court, pursuant to Tennessee Rule of Civil

---

[19] In its Response to Amended Motion to Dismiss Adversary Proceeding, the Plaintiff argues that Rule 9014(c) is permissive rather than mandatory, and there was no assurance that a stay would be granted.  While it is true that a court is not required to grant a request to invoke the stay, the Plaintiff never made the request, either in writing or orally, prior to, during, or immediately after the September 11, 2007 trial.

[20] That the Plaintiff was in receipt of the Dismissal Order immediately after it was entered is not in dispute and is established by the September 17, 2007 letter transmitted by its counsel to the Escrow Agent.  *See* AMD. COMPL. Ex. 3.

Procedure 65, seeking a temporary restraining order preventing the Defendants from recording the
Quit Claim Deeds.

In its Response to Amended Motion to Dismiss, the Plaintiff also advances an argument that
the Federal Rules of Bankruptcy Procedure, primarily Rule 9014(c), deprived it of substantive due
process by failing to provide it with an ample opportunity to prevent the recording of the Quit Claim
Deeds following entry of the Dismissal Order and that it was deprived of its constitutionally
protected right in the Webb Mountain Property due to the failure of Rule 7062 to apply to the
Dismissal Order, especially in light of the requirements necessary under a Rule 8005 motion which
are, in essence, those required to obtain a injunctive relief.  "Substantive due process claims involve
allegations of '(1) deprivations of a particular constitutional right and (2) actions that 'shock the
conscience.'"  *Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 769 (6th Cir. 2005) (quoting
*Mansfield Apt. Owners Ass'n v. Mansfield*, 988 F.2d 1469, 1474 (6th Cir. 1993)).  "To establish a
violation of substantive due process, a plaintiff must first establish the existence of a
constitutionally-protected property or liberty interest."  *Silver v. Franklin Township, Bd. of Zoning
Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992).

There is no question that the Plaintiff held a constitutionally protected right in the Webb
Mountain Property and it could not be deprived of that property without adequate notice.  However,
the Plaintiff was given more than adequate notice that, in the event of dismissal, the Defendants
would be entitled to record the Quit Claim Deeds.  The Plaintiff, through Mr. Collier, voluntarily
executed the Quit Claim Deeds and entered into the Conditional Extension Agreement and Escrow
Agreement under which the Quit Claim Deeds were held in escrow.  The Conditional Extension

47

Agreement unambiguously provides for the Quit Claim Deeds to be recorded "immediately" by the escrow agent if the Plaintiff did not pay the Promissory Notes in full.  AMD. COMPL. EX. 2; AMD. COMPL. COLL. EX. 4.  Similarly, the Escrow Agreement, executed by the Plaintiff through Mr. Collier on March 29, 2007, provides:

> Webb Mtn. shall, pursuant to the terms and conditions of the Conditional Extension of Borrower's Obligations Under Promissory Notes dated March 27, 2007 ("Conditional Extension"), deliver to Escrow Agent four original fully executed and properly notarized Quit Claim Deeds for the property secured by each Lender's lien, each Quit Claim Deed conveying the property secured by each lender's lien back to the respective lenders.
>
> Escrow Agent shall, upon written notification certifying that Webb Mtn. is in default in the payment of principal and/or interest required by the Conditional Extension , as to such lender's note, from any one lender, immediately record the Quit Claim Deed for the property that is securing the promissory note which is in default.  No further notice to, or demand of, any other party shall be required.

AMD. COMPL. EX. 2.

The Fifth Amendment prohibits the federal government from depriving any person of due process and/or its legally protected property rights, and while the Plaintiff correctly argues that it held a legal right in the Webb Mountain Property, the Defendant also correctly points out that in order for the Plaintiff to have been deprived of its due process due to the Federal Rules of Bankruptcy Procedure, it would have to have been entitled to a legally protected right to either the automatic stay or a stay of execution, and it held neither.  A party which is not in bankruptcy is not entitled to a stay afforded by the Bankruptcy Code, as that right is granted only through the commencement of a bankruptcy case, *see* 11 U.S.C. § 362(a), and once the Dismissal Order was entered and the Plaintiff's case was dismissed, the bankruptcy estate was dissolved and the Webb Mountain Property ceased to be property of any bankruptcy estate subject to the protections of the

automatic stay.  Likewise, there is no authority other than the Federal Rules of Civil Procedure, as made applicable to the Federal Rules of Bankruptcy Procedure, granting a stay of execution, which is not a constitutionally protected property right.

Moreover, the Plaintiff acknowledges that it was not deprived of due process with respect to the Motion to Dismiss Bankruptcy Case filed by the Defendants and litigated on September 11, 2007.  "[O]nce the initial notice of the [hearing] was given in compliance with due process, [the Plaintiff] was in a position to keep [itself] apprised of the status of that matter."  *Nagel*, 245 B.R. at 664.  As such, and in that respect, this case differs from those cited by the Plaintiff in support of its claim that all actions taken by the Defendants should be voided because the Dismissal Order was later set aside.  In *Krueger*, the dismissal order was found to be void, and in *Acosta*, the trustee's sale was set aside because the respective debtors were not given notice of the proceedings at which their property rights were affected.  Thus, all actions taken while the dismissals were "in effect" were void as well.

Here, the District Court did not find the Dismissal Order was void for lack of due process or any other reason; it was reversed on other grounds, thus causing reinstatement of the bankruptcy case on February 8, 2008, the date the District Court issued its Order of reversal and remand.  The automatic stay was terminated as a result of the September 17, 2007 Dismissal Order and reinstated prospectively on February 8, 2008, when the case was reinstated.  The recording of the Quit Claim Deeds subsequent to entry of the Dismissal Order did not, pursuant to the contracts between the parties governing the recording of the Quit Claim Deeds, require additional notice to the Plaintiff before those actions occurred, *see* COMPL. EX. 2 at 1, nor were the Defendants required under the

49

Bankruptcy Code and/or the Federal Rules of Civil Procedure, as made applicable by the Federal Rules of Bankruptcy Procedure, to provide notice to the Plaintiff that they intended to exercise their rights under the Conditional Extension Agreement and the Escrow Agreement.

In summary, the court finds that the Dismissal Order was a final appealable order, that no stay was in effect on and after September 17, 2007, and that the Defendants were within their contractual rights under the Conditional Extension Agreement and Escrow Agreement to authorize the release from escrow and the recording of the four Quit Claim Deeds. Additionally, the court finds that the Federal Rules of Bankruptcy Procedure afforded the Plaintiff adequate due process to seek a stay of the Dismissal Order and/or request the application of Rule 62 to the Dismissal Order prior to the Defendants' recording of the Quit Claim Deeds. Finally, the Defendants were not prohibited from obtaining the release from escrow or recording of the Quit Claim Deeds following entry of the Dismissal Order, and neither 28 U.S.C. § 1651 nor 11 U.S.C. § 105(a) provide the court with the authority to undo those legitimate legal actions. The Defendants' Motion to Dismiss Adversary Proceeding will, with respect to Counts I, II, and V, of the Amended Complaint, be granted and these Counts will be dismissed.

**B**

**COUNT VI**

In Count VI, the Plaintiff avers that the Escrow Agreement was never executed by the Defendants and, therefore, is void and unenforceable because there was no meeting of the minds or agreement between the parties. Accordingly, it seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, setting aside the Quit Claim Deeds and divesting title of the Webb Mountain Property from

50

the Defendants to be re-vested in the Plaintiff.  However, in its Response to Amended Motion to

Dismiss, the Plaintiff states that "upon the review of the other authorities cited by the defendants in

their Reply, WEBB MTN. does not object to the dismissal of Count VI of the Amended Complaint."

The court need not, therefore, address the merits of the Defendants' arguments and Count VI will

accordingly be dismissed.

## C

### COUNTS III and IV

In Counts III and IV, the Plaintiff focuses upon the following sworn statement found on each

of the four Quit Claim Deeds recorded on September 18, 2007:

> I/we hereby swear or affirm that the actual consideration for this transfer, or value of
> the property of [sic] interest in property transferred, whichever is greater is $ 0 ,
> which amount is equal to or greater than the amount which the property or interest
> in property transferred would command at a fair and voluntary sale.

s/   Kenneth Whaley
Affiant

COMPL. COLL. EX. 4.  The Plaintiff avers that the balances owed to the Defendants on the Promissory

Notes secured by the Webb Mountain Property totaled $22,553,320.37 at the time the Conditional

Extension Agreement was executed and that the sworn statements (collectively, Sworn Statements)

were false in reflecting the value and/or consideration to be $0.00.  In Count III, the Plaintiff alleges

that the Quit Claim Deeds were wrongly released from escrow and should not have been recorded

with the allegedly false Sworn Statements, both of which violated Section 2(E) of the Escrow

Agreement.  In Count IV, the Plaintiff avers that the Defendants' allegedly false Sworn Statements,

51

together with their subsequent failure to pay a recording tax to the Sevier County Register of Deeds, render each Quit Claim Deed null and void as a fraudulent transfer which should be set aside.

Section 2(E) of the Escrow Agreement provides that "[u]nder no circumstances shall the Escrow Agent take any action in violation of any statute, rule, or regulation." COMPL. EX. 2 at 2. The Plaintiff avers that the release of the Quit Claim Deeds from escrow was in violation of this section of the Escrow Agreement; however, it offers no factual basis for this averment. The court presumes that the Plaintiff is relying, in part, upon the failure of the Escrow Agent to comply with the September 17, 2007 facsimile from the Plaintiff's counsel, advising that the Quit Claim Deeds should not be released and/or recorded. *See* COMPL. EX. 3.

This argument, however, is without merit. Under the express terms of the Escrow Agreement, while the Escrow Agent was under an obligation to hold the Quit Claim Deeds, it was instructed, "upon written notification" certifying the Plaintiff's default in the payment of principal and/or interest under the Conditional Extension Agreement, to "immediately record" the Quit Claim Deeds without "further notice to, or demand of, any other party[,]" COMPL. EX. 2 at 1, considering "written notification from any [Defendant], certifying that [the Plaintiff] is in default . . . under the Conditional Extension, as conclusive evidence of default as it pertains to this instrument . . .[.]" COMPL. EX. 2 at 1-2. Additionally, with respect to any disputes, the Escrow Agreement is clear that "in the event of a dispute between or among the parties, which dispute in the sole discretion of Escrow Agent shall cause Escrow Agent to be uncertain as to what action to take, Escrow Agent shall be entitled to require such further written authorization . . . as Escrow Agent deems necessary . . .[.]" COMPL. EX. 2 at 3.

52

Once alerted by the Defendants to the fact that the requirements of the Conditional Extension Agreement had not been met, the Escrow Agent was under no obligation to the Plaintiff not to release and/or record the escrowed Quit Claim Deeds, which were deeds in lieu of foreclosure and obtained following default by the Plaintiff on the Promissory Notes.  In fact, as previously discussed, the Escrow Agent was expressly instructed, under the terms of the Escrow Agreement, "to immediately record" the escrowed Quit Claim Deeds in the event of notification of nonpayment by the Plaintiff.  AMD. COMPL. EX. 2 at 1.  Accordingly, the Escrow Agent acted fully within the scope of the Escrow Agreement, and as such, did not violate any statute, rule, or regulation by releasing and/or recording the Quit Claim Deeds in compliance with the terms therein.  *See, e.g., Kincaid v. South Trust Bank*, 221 S.W.3d 32, 38-39 (Tenn. Ct. App. 2006) ("The rights of a secured party to enforce its security interest in collateral after the debtor's default are an important feature of a secured transaction.  Because of the default, [the bank] had the right to foreclose on the property.  Alternatively, [the bank] had the right to accept a deed in lieu of foreclosure.") (citations omitted)).

The Plaintiff also alleges the falsity of the Sworn Statement certifying that the consideration for each Quit Claim Deed was $0.00 in light of the Defendants' assertions in their Reply to Response to Motion to Dismiss Adversary Proceeding that the Plaintiff received "value" as defined by Tennessee Code Annotated § 66-3-304(a) (2004)[21] because the Plaintiff's antecedent debt, totaling $22,553,320.37 under the Promissory Notes, was extinguished once the Quit Claim Deeds were recorded.  Based upon its argument that the Sworn Statements were false, the Plaintiff avers that the Quit Claim Deeds were erroneously recorded by the Sevier County Register of Deeds without

---

[21] *See infra* Section F of this Memorandum.

payment of the recording tax, which it alleges should have been $83,447.28 based upon the

consideration of the debt owed in the amount of $22,553,20.37.  Thus, the Plaintiff argues that the

failure of the Defendants to pay this recording tax was in violation of the Tennessee statute and

therefore constituted a breach of the Escrow Agreement.

> "Consideration" is defined by Tennessee courts as follows:
>
> The question of what constitutes consideration adequate or sufficient to support a contract has been addressed by a number of Tennessee courts.  The court in *University of Chattanooga v. Stansberry,* 9 Tenn. App. 341, 343 (1928), defined consideration as "either a benefit to the maker of the promise or a detriment to, or obligation upon, the promise[e]."  *Id.*  In *Palmer v. Dehn*, 29 Tenn. App. 597, 198 S.W.2d 827 (Tenn. Ct. App. 1946), this Court said, "For there to be a consideration in a contract between parties to the contract it is not necessary that something concrete and tangible move from one to the other. Any benefit to one and detriment to the other may be a sufficient consideration."  *Id.*
>
> In addition to the benefit/detriment paradigm, Tennessee courts have defined valid consideration in terms of the promisee's legal rights and obligations. "Consideration [exists] when the promisee does something that he is under no legal obligation to do or refrains from doing [that] which he has a legal right to do."  *Kozy v. Werle*, 902 S.W.2d 404, 411 (Tenn. Ct. App. 1995) (citing *Brown Oil Co., Inc. v. Johnson*, 689 S.W.2d 149 (Tenn .1985)).

*Wood v. Lowery*, 238 S.W.3d 747, 755-56 (Tenn. Ct. App. 2007); *see also Calabro v. Calabro*, 15

S.W.3d 873, 876 (Tenn. Ct. App. 1999).  It is not incumbent upon the court to determine, however,

whether the Sworn Statements evidence the proper consideration for the transfer because

§ 67-4-409(a), the recording statute relied upon by the Plaintiff, does not provide a basis for

invalidating the Quit Claim Deeds.

> Section 67-4-409(a) provides, in material part:
>
> **Recordation Tax**. – (a) Transfers of Realty.  On all transfers of realty, whether by deed . . . or other instrument evidencing transfer of any interest in real estate, there shall be paid for the privilege of having the same recorded a tax, for state purposes

only, of thirty-seven cents . . . per one hundred dollars . . . or major fraction thereof, as follows:

> (1) On the transfer of a freehold estate, the tax shall be based on the consideration for the transfer, or the value of the property, whichever is greater. "Value of the property," as used in this section, means the amount that the property transferred would command at a fair and voluntary sale, and no other value;

> . . . .

> (6) The tax shall be paid by the grantee or transferee of the interest in real estate, as shown on the instrument evidencing the transfer of such interest, and it shall be collected by the register of the county in which the instrument is offered for recordation;

>> (A) The grantee, the grantee's agent, or a trustee acting for the grantee shall be required to state under oath upon the face of the instrument offered for record in the presence of the register, or before an officer authorized to administer oaths, the actual consideration or value, whichever is greater, for the transfer of a freehold estate;

>> (B) The making under oath of any false statement known to be false respecting the consideration or value of property transferred shall be punishable as perjury;

>> (C) A person who obtains several deeds or other instruments of conveyance for the same transfer of one and the same tract or parcel of real estate shall pay only one (1) state tax with respect to such transfer;

>> (D) The register is forbidden to record the transfer until the tax has been paid[.]

TENN. CODE ANN. § 67-4-409(a) (Supp. 2008).

The purpose of § 67-4-409 is "to generate state revenue, not supplant the priority rules found in . . . the Code." *Nashville City Bank & Trust Co. v. White*, 1990 Tenn. App. LEXIS 195, at *13, 1990 WL 31745, at *5 (Tenn. Ct. App. Mar. 23, 1990) (Koch, J., dissenting). This purpose is evident from § 67-4-409(a), which expressly reads that the tax is "for state purposes only."

Additionally, although the statute directs the payment of a recording tax by any party seeking to record a deed, actual enforcement of the statute is charged only against registers of deeds who are to accept the tax prior to recording. As such, there is no private right of action for noncompliance with this statute, and the Escrow Agent cannot be said to have taken any action in violation of the statute, because he was not the one forbidden by § 67-4-409(a)(6)(D) to act. Furthermore, "[i]n the case of quitclaim deeds, the tax shall be based only on the actual consideration given for that conveyance[,]" TENN. CODE ANN. § 67-4-409(a)(4), and "[w]here the conveyance is given to satisfy an antecedent debt, the grantee may in good conscience represent [within the oath of value] that a nominal consideration was given for that conveyance. The representation does not work an estoppel against the grantee [from showing a greater consideration than the amount they swore to on the face of the deed]." *Bowman v. Midstate Fin. Co., Inc.*, 1999 Tenn. App. LEXIS 235, at *5, 1999 WL 219163, at *2 (Tenn. Ct. App. Apr. 16, 1999).

Based upon the record, the court finds that the Plaintiff's averments in Counts III and IV are without merit. There is no private right of action under § 67-4-409, and the failure to pay a recording tax does not, under Tennessee law, render the recorded document null and void. Similarly, without making a determination as to the veracity of the Sworn Statement, the fact that the Defendants certified that the actual consideration for the Quit Claim Deeds was $0.00 does not affect the validity of those recorded documents. As such, the Plaintiff's Amended Complaint shall be dismissed as to Counts III and IV.

**D**

**COUNT IX**

In Count IX, the Plaintiff alleges that the Conditional Extension Agreement, Escrow Agreement, and escrowed Quit Claim Deeds work an impermissible clog on and an impermissible and ineffective waiver of the Plaintiff's equity of redemption, *i.e.*, the right to pay off a mortgage note between the date of default and the date of the sale of the property. Specifically, the Plaintiff argues that the Conditional Extension Agreement and Escrow Agreement extended the maturity date of the notes from January 3, 2007 to June 25, 2007, and that no default could occur until after June 25, 2007. Therefore, according to the Plaintiff, those documents impermissibly served to cut off the Plaintiff's ability to redeem the Webb Mountain Property between default and foreclosure.

The Plaintiff's definition of "equity of redemption" is derived from the common law of many states. *See, e.g., Davis Oil Co. v. Mills*, 873 F.2d 774, 782 (5th Cir. 1989) ("The court found that the equity of redemption is defined by Alabama law to exist only up to the moment when the mortgagee exercises the power of sale[.]"); *John Hancock Mut. Life Ins. Co. v. Bruening Farms Corp.*, 537 F. Supp. 936, 938 n.4 (N.D. Iowa 1982) ("'Equity of redemption' is defined as the pre-foreclosure right to discharge indebtedness and thereby clear property from the encumbrance of a mortgage."); *CCC Props., Inc. v. Kane*, 582 So. 2d 159, 161 (Fla. Ct. App. 1991) ("The right or 'equity' of redemption is defined as '[t]he right of the mortgagor of an estate to redeem the same after it has been forfeited, at law, by a breach of the condition of the mortgage, upon paying the amount of debt, interest and costs.' This right may be exercised at any time before the sale.") (citations omitted); *accord Starits*

*v. Avery*, 213 N.W. 769, 770 (Iowa 1927); *Brown v. Timmons*, 256 P. 176, 177 (Mont. 1927);

*Ebelharr v. Tennelly*, 80 S.W. 459, 460 (Ky. Ct. App. 1904).

Under Tennessee law, the term "equity of redemption" is derived from Tennessee Code

Annotated:

> **Right of redemption – Waiver.** – Real estate sold for debt shall be redeemable at
> any time within two (2) years after such sale:
>
> (1) Where it is sold under execution;
>
> (2) Where it is sold under any decree, judgment, or order of a court of
> chancery, whether founded upon a foreclosure of a mortgage, or a deed of trust, or
> otherwise, unless, upon application of the complainant, the court orders that the
> property be sold on a credit of not less than six (6) months, nor more than two (2)
> years; and that, upon confirmation thereof by the court, no right of redemption or
> repurchase shall exist in the debtor or the debtor's creditor, but that the title of the
> purchaser shall be absolute; and
>
> (3) Where it is sold under a deed of trust or mortgage without a judicial
> sentence, unless the right of redemption is expressly waived by the deed or mortgage;
> and a waiver of the "equity of redemption," or waiver using words of similar import,
> shall be sufficient to waive the right of redemption afforded by this section in all
> deeds of trust and mortgages, whether heretofore or hereafter existing.

TENN. CODE ANN. § 66-8-101 (2004).

In support of its argument, the Plaintiff relies upon *Swift v. Kirby*, 737 S.W.2d 271 (Tenn.

1987), decided by the Tennessee Supreme Court in 1987. On appeal from the Tennessee Court of

Appeals, the primary issue in *Swift* was first defined as "whether the statutory right to redeem real

property sold at foreclosure, granted by T.C.A. § 66-8-101 *et seq*., is waived by use of the phrase

'equity of redemption'," but "narrowed to whether the phrase 'equity of redemption' embraces the

statutory right of redemption." *Swift*, 737 S.W.2d at 271, 272. The Court of Appeals found, *inter

alia*, that language in the original deed of trust waiving the "equity of redemption" had not waived

the statutory right of redemption provided by § 66-8-101, "that there was a fundamental distinction between equity of redemption and the statutory right of redemption in that equity of redemption refers to the right of the debtor 'prior to foreclosure, to discharge the indebtedness and thus clear his property from the encumbrance of the mortgage', while statutory redemption is the right to redeem after foreclosure and sale." *Swift*, 737 S.W.2d at 272.

In making its determination, the *Swift* court analyzed prior Tennessee cases relied upon by the Tennessee Court of Appeals below, as well as the law of sister states and discussed how the term "equity of redemption" was generally used.  Observing that "Tennessee is not the only state in which the phrase 'equity of redemption' has embraced the entire panoply of rights of redemption as they developed down through the years," the court cited with approval the following definition:

> An equity of redemption, or legal right to redeem, is that right which the owner of the property has to regain the complete title to his property by the payment to the purchaser of the amount for which the property was sold, with interest and penalties, in accordance with the provisions of the statute.

*Swift*, 737 S.W.2d at 275 (citing *Messer v. Am. Eagle Fire Ins. Co.*, 12 S.W.2d 358 (Ky. Ct. App. 1928)).  The Court then concluded that "if the parties did not intend to waive the statutory right of redemption by the use of the words 'equity of redemption', they waived nothing, because no other right of redemption was in use or authorized by the law of this State[,]" and reversed the Court of Appeals, holding that "the expression 'equity of redemption' by common usage throughout the period from 1820 to date has been sufficiently pervasive to include within its meaning the statutory right of redemption granted in T.C.A. § 66-8-101 *et seq*. and . . . its use fulfills the requirement of an express waiver required by T.C.A. § 66-8-101(3)." *Swift*, 737 S.W.2d at 276.

With regard to the facts presented in this adversary proceeding, however, the provisions of § 66-8-101 do not apply because the Webb Mountain Property was not "real estate sold for debt . . . under execution," "under any decree, judgment, or order of a court," or "under a deed of trust or mortgage without a judicial sentence" as required by the statute.  Although the Quit Claim Deeds were, as reflected therein, deeds in lieu of foreclosure, there was no "sale for debt" of the Webb Mountain Property under the conditions specified in Tennessee Code Annotated § 66-8-101, and that section has no application.  Instead, the transfer of the Webb Mountain Property from the Plaintiff to the Defendants was consensual.  *See Budensiek v. Williams*, 1988 Tenn. App. LEXIS 623, at *8, 1988 WL 102774 at *3 (Tenn. Ct. App. Oct. 6, 1988) ("[A] mortgagee taking a deed in lieu of foreclosure from a mortgagor constitutes a purchase of the mortgagor's interest rather than a foreclosure.").  It is immaterial that the Quit Claim Deeds were executed by Mr. Collier, on behalf of the Plaintiff, as part of an agreement with the Defendants in order to stop impending foreclosure proceedings.

> Courts are more inclined to uphold deeds in lieu of foreclosure in the context of a workout.  This is especially true in cases where a sophisticated commercial borrower is involved, where there is no disparity in bargaining power and negotiating strength, where the borrower is represented by knowledgeable counsel, where there is an acknowledged loan default, where there is little or no equity in the mortgaged property, and where there is actual and meaningful consideration for the deed in lieu of foreclosure such as a forbearance agreement or a release of personal liability.  "There are valid policy considerations that are furthered by deed-in-escrow transactions as part of a loan workout and that should be encouraged by the courts . . . [.]"

*Greene v. E. Coast Mktg., Inc. (In re Greene)*, 2007 Bankr. LEXIS 2021, at *19-20, 2007 WL 1309047, at *5 (Bankr. E.D. Va. May 3, 2007) (quoting John C. Murray, *Mortgage Workouts: Deeds in Escrow*, 41 Real Prop. Prob. & Tr. J. 185, 193-94 (2006)); *see also Kincaid*, 221 S.W.3d at 39 ("There is nothing unlawful about a secured creditor releasing guarantees on an indebtedness

in exchange for a deed in lieu of foreclosure to recover the secured property[.]"); *Levenson v. Feuer*, 803 N.E.2d 341, 348 (Mass. App. Ct. 2004) ("[After default on a loan, d]elivery of such a deed in lieu of foreclosure of a previously executed mortgage encumbering the same property is given in compromise of the parties' rights and obligations under the mortgage and note[.]").

Furthermore, a prohibited "clog" on a party's redemption rights occurs when a secured party seeks to limit a debtor's rights of redemption "to the period between default and consummation of a foreclosure sale."  In its Response to Amended Motion to Dismiss Adversary Proceeding, the Plaintiff focused upon the Tennessee Supreme Court's statement in *Swift* that "[a]lthough no reported case in Tennessee has so held, the courts of our sister states have, without exception, held that the equity of redemption cannot be waived in the mortgage instrument or at any time prior to default[,]" *Swift*, 737 S.W.2d at 276, even going so far as to surmise that "[i]f the issue were clearly presented, the Tennessee Supreme Court would no doubt adopt the rule." RESP. TO AMEND. MTN. TO DISMISS ADV. PROC. at 25.  However, this argument fails to take into account the *Swift* court's statements in context with the holding of the Tennessee Court of Appeals that it was reviewing.

In its analysis of sister states' laws, the court recognized the different definitions of "equity of redemption" but additionally stated that it would be unnecessary to cite to the many cases recognizing that the term "equity of redemption" included the statutory right of redemption, but did cite to the following, which it deemed "[t]ypical of those cases":

> So we have the terms, "redemption" and "equity of redemption," which belonged to a system of law that gave the legal estate, defeasibly before default and absolutely afterwards, to the mortgagee, and which, while that system prevailed, were descriptive of the mortgagor's right to go into equity, on the condition of his paying his debt, to redeem a forfeited estate and demand a re-conveyance.  These descriptive

61

words yet survive, and are in use, although the ideas they once represented have long
since become obsolete.

*Swift*, 737 S.W.2d at 275-76 (quoting *Kortright v. Cady*, 21 N.Y. 343, 365-66 (N.Y. 1860)).  The

court then stated that:

> The "idea" that the phrase equity of redemption represented, originated when
> mortgages were used as security instruments, prior to the advent of the deed of trust,
> and when courts of equity decided to relieve debtors of the harshness of the law of
> mortgages that vested full title in the mortgage immediately upon default.  The
> remedy provided by the courts allowed the debtor to redeem at any time between
> default and consummation of a foreclosure sale.  All authorities agree that that right
> was the original meaning of the equity of redemption.  However, with the advent of
> the right of redemption created by statute in the various states, the right of
> redemption continued to be referred to in many states, as in Tennessee, as the "equity
> of redemption."
>
> Although no reported case in Tennessee has so held, the courts of our sister states
> have, without exception, held that the equity of redemption cannot be waived in the
> mortgage instrument or at any time prior to default. . . . The purpose of that principle
> of law was to prevent the creditor-mortgagee from thwarting the grant of the equity
> of redemption by courts of equity to relieve the harshness of the mortgage
> instruments vesting of fee simple title in the mortgage upon the instant of default.
>
> As is relevant to the case at bar it is not necessary that we adopt that rule.  It is
> sufficient to observe that no rule exists in Tennessee validating a waiver in a
> mortgage or deed of trust, the effectiveness of which is limited to the period between
> default and consummation of a foreclosure sale.  Such a waiver, if it existed, would
> meet the definition advanced by the Court of Appeals.  We are not aware of any time
> in the history of this State when such a waiver was in use and recognized by the
> courts.[22]

*Swift*, 737 S.W.2d at 276.

---

[22] The Tennessee Court of Appeals, in *Harmon*, cited this rule of law as follows:

> The debtor or mortgagor cannot, in the inception of the instrument, as part of or collateral to its
> execution, in any manner deprive himself of his equitable right to come in after a default in paying the
> money at the stipulated time, and to pay the debt and interest, and thereby to redeem the land from the
> lien and encumbrance of the mortgage; the equitable right of redemption after default is preserved[,]
> remains in full force, and will be protected and enforced by a court of equity, no matter what
> stipulations the parties may have made in the original transaction, purported to cut off this right.

*Harmon*, 8 Tenn. App. at 141.

This court reads *Swift* as pronouncing that no deed of trust or mortgage may prohibit a debtor from redeeming its property between the time of default and the time of foreclosure by payment of the underlying debt.  However, such an event has not occurred in this case, despite the Plaintiff's arguments to the contrary or its arguments that the Conditional Extension Agreement extended the maturity date of the Promissory Notes from January 3, 2007, to June 25, 2007, thus precluding the occurrence of any default prior to June 25, 2007.  The Promissory Notes were executed and the Deeds of Trust were recorded in March 2006, with a maturity date on each Note of January 3, 2007. The Plaintiff subsequently defaulted under the terms of those documents, and, at Mr. Collier's request, it was given a thirty-day extension.  Following the Plaintiff's failure to pay after the extension time had expired or to otherwise cure the default under the Promissory Notes and Deeds of Trust, the Defendants initiated foreclosure proceedings.  However, prior to the scheduled foreclosure sale, the Plaintiff sought and received from the Defendants a ninety-day postponement of the sale to a date no earlier than June 25, 2007, and agreed to the execution of the March 27, 2007 Conditional Extension Agreement, Escrow Agreement, and Quit Claim Deeds.

The Plaintiff expressly acknowledges in the Conditional Extension Agreement "that it is in default, that it has no valid legal defense to the pending foreclosure proceedings and that the full balance of each Promissory Note is due and payable in full, plus applicable interest and attorneys fees as consideration for Note Holders foregoing foreclosure at this time." AMD. COMPL. EX. 1 at 1.  The Conditional Extension Agreement then outlines the terms of the parties' workout, "subject to and conditioned upon performance and/or satisfaction of the terms, provisions, and conditions set out below," by which "the parties agree to extend the Borrowers' obligations under the Promissory

Notes[,]" AMD. COMPL. EX. 1 at 1-2, including the payment of interest to Gerald Franklin and execution and delivery into escrow of the Quit Claim Deeds, along with the agreement not to encumber the Webb Mountain Property or to convey any interest therein. The Conditional Extension Agreement also unambiguously provides that "if Buyer [Plaintiff] fails to pay its entire obligation of principal and/or interest under the Promissory Notes on or before June 25, 2007, the Escrow Agent shall immediately record the Quit Claim Deeds, thereby transferring any and all right, title and interest that Webb Mtn, LLC may have in and to the four (4) tracts of real property to the Note Holders." AMD. COMPL. EX. 1 at 2.

It is evident from the record that the extension to June 25, 2007, was merely an extension of the foreclosure date. This forbearance of foreclosure was not, however, an extension of the maturity date under the Promissory Notes. The Plaintiff's default occurred after it failed to pay the balances of the Promissory Notes on January 3, 2007, or at the very latest, after it failed to pay the balances in February 2007, following the thirty-day extension afforded by the Defendants at the Plaintiff's request. As such, the Conditional Extension Agreement, Escrow Agreement, and Quit Claim Deeds merely facilitated the means by which the forbearance of foreclosure would take place. There was no prohibition upon the Plaintiff paying off the balances owed prior to June 25, 2007, which was, in fact, the stated purpose of the Conditional Extension Agreement. Had the Plaintiff paid the balances, the Conditional Extension Agreement provided for the Escrow Agent to "return the original, executed Quit Claim Deed(s) to Borrower relating to such Promissory Note(s) paid in full." AMD. COMPL. EX. 1 at 3. This requirement was reiterated in the Escrow Agreement. *See* AMD. COMPL. EX. 2 at 1.

64

Based upon the record and the law set forth herein, the court finds that § 66-8-101 is inapplicable to the conveyance of the Webb Mountain Property from the Plaintiff to the Defendants via the March 27, 2007 Quit Claim Deeds as recorded on September 18, 2007, because it was not a sale of real property for debt as contemplated under TENN. CODE ANN. § 66-8-101.  Furthermore, the Conditional Extension Agreement did not extend the maturity date of the Promissory Notes but was a forbearance agreement with respect to a pending foreclosure sale, and the Conditional Extension Agreement, Escrow Agreement, and Quit Claim Deeds executed in association therewith did not impermissibly "clog" the Plaintiff's ability to cure the default prior to June 25, 2007, which was the expiration date of the forbearance period.  Accordingly, the Defendants' Amended Motion to Dismiss will be granted as to Count IX, and that Count shall be dismissed.

## E

## Count XI

In Count XI, the Plaintiff argues that the Conditional Extension Agreement, Escrow Agreement, and Quit Claim Deeds constituted a transfer of the Plaintiff's interest in the Webb Mountain Property that is avoidable under 11 U.S.C. § 548(a)(1)(B) (2005), which allows the Plaintiff, in its capacity as Debtor-in-Possession, to avoid pre-petition transfers that were constructively fraudulent.  Section 548 provides in material part:

> (a)(1)  The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
>
>     . . . .

65

(B)(I) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation[.]

. . . .

(d)(2)  In this section –

(A) "value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor[.]

11 U.S.C. § 548(d) (2005).[23]

In its Amended Complaint, at Count XI, the Plaintiff avers that the March 27, 2007 Conditional Extension Agreement, Escrow Agreement, and Quit Claim Deeds collectively amounted to a transfer of the Plaintiff's interest in the Webb Mountain Property.  The Plaintiff also avers that it received less than a reasonably equivalent value in exchange for executing the Conditional Extension Agreement, Escrow Agreement, and Quit Claim Deeds because the value of the Webb Mountain Property exceeded the Defendants' secured claims and that the transfer rendered it insolvent by leaving it with unreasonably small assets in relation to the business transaction it was commencing.  The Defendants dispute the Plaintiff's averments, arguing that the Plaintiff did, in fact, receive reasonably equivalent value by avoiding foreclosure and receiving additional time to comply with its payment obligations under the Promissory Notes.

---

[23] The Plaintiff, as Debtor-in-Possession, bears the burden of proving each statutory element by a preponderance of the evidence.  *Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 319 B.R. 134, 138 (Bankr. E.D. Ky. 2004), *aff'd*, 196 Fed. Appx. 337, 341 (6th Cir. 2006).  Intent is not an element under § 548(a)(1)(B).  *Holcomb Health Care Servs., LLC v. Quart Ltd., LLC (In re Holcomb Health Care Servs., LLC)*, 329 B.R. 622, 672 (Bankr. M.D. Tenn. 2004).

The first element that must be proved is the existence of a transfer to be avoided. As defined by the Bankruptcy Code and for the purposes of avoidance under § 548, the term "transfer" means

    (A) the creation of a lien;

    (B) the retention of title as a security interest;

    (C) the foreclosure of a debtor's equity of redemption; or

    (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with –

        (i) property; or

        (ii) an interest in property.

11 U.S.C. § 101(54) (2005). "Congress intended the term 'transfer' to be as broad as possible and, therefore, defined the term expansively in the Bankruptcy Code." *Ford v. Skovich (In re Skovich)*, 337 B.R. 441, 445 (D.N.H. 2006). "Under this definition, any transfer of an interest in property is a transfer, including a transfer of possession, custody, or control even if there is no transfer of title, because possession, custody, and control constitute interests in property." *Lemley-Cabbiness Farms v. FDIC (In re Lemley Estate Bus. Trust)*, 65 B.R. 185, 189 (Bankr. N.D. Tex. 1986) (citing S. Rep. No. 95-989, 95th Cong. 2d Sess. 26-27 (1978)). As contemplated within and under the Bankruptcy Code, "[t]he definition of transfer focuses on what the debtor relinquished[,] not the formalities of the documentation." *Rosen v. MIF Realty, L.P. (In re Vuckovic)*, 211 B.R. 1002, 1005 (Bankr. M.D. Fla. 1997) (stating that "[u]nder this analysis, almost every business transaction constitutes a transfer.").

As the court has stated previously, the Conditional Extension Agreement, Escrow Agreement, and escrowed Quit Claim Deeds do not purport to convey title in the Webb Mountain Property to

67

the Defendants on March 27, 2007. The court has also determined that the Conditional Extension Agreement, Escrow Agreement, and escrowed Quit Claim Deeds do not, either individually or collectively, work as a mortgage against the Webb Mountain Property. It is, however, beyond dispute that the Plaintiff held equitable and possessory interests in the Webb Mountain Property at the time the Conditional Extension Agreement and Escrow Agreement were executed and the unrecorded Quit Claim Deeds were placed into escrow, thus falling within the Code's definition and creating a "transfer" of the Plaintiff's interest in the Webb Mountain Property for the purposes of § 548(a)(1)(B).[24] There is also no dispute that this "transfer" occurred within two years of the filing of the Plaintiff's bankruptcy case, leaving only the reasonably equivalent value and insolvency elements at issue.

The Bankruptcy Code does not define "reasonably equivalent value," although "[v]alue has been defined as that which provides an economic benefit, either direct or indirect, to the debtor." *Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 319 B.R. 134, 138 (Bankr. E.D. Ky. 2004). "In assessing whether a challenged transfer is supported by reasonably equivalent value, courts generally compare the value of the property transferred with the value of that received in exchange for the transfer." *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 707 (6th Cir. 1999). "[I]t is clear that the debtor need not collect a dollar-for-dollar equivalent to receive reasonably equivalent value." *Butler Aviation Int'l. v. Whyte (In re Fairchild Aircraft Corp.)*, 6 F.3d 1119, 1125-26 (5th Cir. 1993).

---

[24] There is a distinction between a conveyance or transfer of title in property versus a transfer or conveyance of an interest in property. While the Plaintiff's arguments in Counts VII, VIII, and X turn on whether the Conditional Extension Agreement, Escrow Agreement, and escrowed Quit Claim Deeds were a mortgage disguised as a transfer of title in the Webb Mountain Property to the Defendants, the issues with respect to Count XI focus upon whether those documents transferred any interest held by the Plaintiff in the Webb Mountain Property, and the two are distinguishable as such.

Clearly, "the contractual right to receive payment in the event that it turns out well is obviously worth something." *Allard v. Flamingo Hilton (In re Chomakos)*, 69 F.3d 769, 771 (6th Cir. 1995). Nevertheless, "valuation considerations are inherently fact-laden, turning on the case-specific circumstances surrounding the debtor's decision to enter into the challenged transaction." *Lowe v. B.R.B. Enters., Ltd. (In re Calvillo)*, 263 B.R. 214, 220 (W.D. Tex. 2000).

With respect to insolvency, which must have occurred at the time of or as a result of the transfer, the Bankruptcy Code defines "insolvent" as follows:

> (A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of –
>
>> (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
>>
>> (ii) property that may be exempted from property of the estate under section 522 of this title[.]

11 U.S.C. § 101(32)(A) (2005). "Insolvency for the federal causes of action is limited to balance sheet insolvency. 'Insolvency . . . is basically a balance sheet test: that is, a debtor is insolvent when the debtor's liabilities exceed the debtor's assets, excluding the value of preferences, fraudulent conveyances and exemptions.'" *Silagy v. Gagnon (In re Gabor)*, 280 B.R. 149, 160 (Bankr. N.D. Ohio 2002) (quoting *Foreman Indus., Inc. v. Broadway Sand & Gravel (In re Broadway Indus., Inc.)*, 59 B.R. 145, 149 (Bankr. S.D. Ohio 1986)).

In the Amended Complaint, the Plaintiff avers that the value of the Webb Mountain Property exceeded the $22,553,320.37 aggregate sum of the Defendants' claims against it. There is, however, nothing in the record to allow the court to determine the value of the Webb Mountain Property on

69

March 27, 2007.  And although there is evidence that the Plaintiff received a forbearance of the scheduled foreclosure sale and additional time to make its payments under the terms of the Conditional Extension Agreement and Escrow Agreement, this evidence does not establish the value of the Webb Mountain Property in comparison with the unpaid balances due under the four Promissory Notes given in exchange for the Quit Claim Deeds executed in favor of the Defendants. As such, the court finds a genuine issue of material fact exists with respect to whether the Plaintiff received reasonably equivalent value for the transfer of the Plaintiff's interests in the Webb Mountain Property effectuated by execution of the Conditional Extension Agreement, Escrow Agreement, and escrowed Quit Claim Deeds and whether the Plaintiff was insolvent on the dates such transfer was made.  The Amended Motion to Dismiss will be denied as to Count XI.

## F

### COUNTS XII and XIII

In Count XII, the Plaintiff avers that the transfer of the Plaintiff's interest in the Webb Mountain Property pursuant to the Conditional Extension Agreement, Escrow Agreement, and Quit Claim Deeds constituted a fraudulent transfer under Tennessee Code Annotated §§ 66-3-305 and 306(a) (2004), and is avoidable under 11 U.S.C. § 544(b) (2005).  Similarly, the Plaintiff avers, in Count XIII, that the release of and subsequent recording of the Quit Claim Deeds constituted a fraudulent transfer under the same Tennessee statutes and is avoidable under § 544(b), which states as follows:

> (1) Except as provided in paragraph (2) [concerning transfers of charitable contributions and not applicable herein], the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is

> allowable under section 502 of this title or that is not allowable only under section
> 502(e) of this title.

11 U.S.C. § 544(b).[25]  "Essentially, this provision permits the trustee to 'stand in the shoes' of an

unsecured creditor and assert causes of action under state fraudulent conveyance laws for the benefit

of all creditors."  *Lyon v. Eiseman (In re Forbes)*, 372 B.R. 321, 330 (B.A.P. 6th Cir. 2007) (citations

omitted).  As evidenced by the plain language of the statute, "§ 544(b) contains four requirements:

(1) [a] creditor; (2) holding an allowable unsecured claim; and (3) a transfer of an interest of the

debtor in property; (4) that is voidable under applicable [state] law."  *Forbes*, 372 B.R. at 330

(quoting *Belfance v. Bushey (In re Bushey)*, 210 B.R. 95, 100 (B.A.P. 6th Cir. 1997)).

With respect to the first two requirements, the Plaintiff has averred in the Amended

Complaint that "EDSA, Jack Collier, Quarles & Brady, LLP and the Tennessee Department of

Revenue" were unsecured creditors with claims allowable under § 502.  Under § 502(a), "[a] claim

or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party

in interest . . . objects."  11 U.S.C. § 502(a) (2005).  It is supplemented in Chapter 11 cases by Rule

3003 of the Federal Rules of Bankruptcy Procedure, which provides that "[t]he schedule of liabilities

filed pursuant to § 521 of the Code shall constitute prima facie evidence of the validity and amount

of the claims of creditors, unless they are scheduled as disputed, contingent, or unliquidated[,]" in

which event only unscheduled creditors and those listed as disputed, contingent, or unliquidated are

required to file a proof of claim in order to participate in voting and distribution.  FED. R. BANKR.

P. 3003(b)(1), (c)(2).

---

[25] The Plaintiff, as Debtor-in-Possession, bears the burden of proof by a preponderance of the evidence.
*Forbes*, 372 B.R. at 330.

71

There does not appear to be any dispute by the Defendants that the aforementioned creditors possess allowed unsecured claims, and in fact, the court takes judicial notice that the Tennessee Department of Revenue has filed two proofs of claim and that Jack Collier, Quarles & Brady, LLP, and EDSA were scheduled by the Plaintiff as unsecured creditors, although EDSA was scheduled as disputed, calling into question its validity since it has not filed a proof of claim. Nevertheless, the statute requires "a" creditor, and the record is sufficient to establish that the Plaintiff has at least one unsecured creditor. Furthermore, there is no analysis necessary with respect to the third element, since the court has already determined earlier in this Memorandum that the Conditional Extension Agreement, Escrow Agreement, and escrowed Quit Claim Deeds constituted a transfer of an interest of the Plaintiff in the Webb Mountain Property.[26]

As to whether the Conditional Extension Agreement, Escrow Agreement, and Quit Claim Deeds are avoidable under the Tennessee Uniform Fraudulent Transfer Act, the Plaintiff cites to Tennessee Code Annotated § 66-3-305(a)(2), concerning transfers which are fraudulent as to present and future creditors, and § 66-3-306, concerning transfers which are fraudulent as to present creditors. Tennessee Code Annotated § 66-3-305(a) provides in material part:

> (a)  A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> . . . .

---

[26] "Transfer" is also a defined term under Tennessee law, meaning "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance[.]"  TENN. CODE ANN. § 66-3-302(12) (2004).

72

(2)  Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

TENN. CODE ANN. § 66-3-305.  Similarly,  Tennessee Code Annotated § 66-3-306 provides:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

TENN. CODE ANN. § 66-3-306.

Reading the two constructive fraud statutes together, they require proof that:

The debtor did not receive reasonably equivalent value in exchange for the transfer; *and*

(1) the debtor was engaged in or about to engage in business or transaction for which [its] remaining assets were unreasonably small in relation to the business or transaction; *or*

(2) the debtor intended to incur, or believed or reasonably should have believed that [it] would incur debts beyond [its] ability to pay as they became due; *or*

(3) the debtor was insolvent at the time of the transfer or was rendered insolvent by the transfer.

73

*Farinash v. Silvey (In re Silvey)*, 378 B.R. 186, 190-91 (Bankr. E.D. Tenn. 2007) (citations omitted).

> Under Tennessee's Uniform Fraudulent Transfer Act, "value" is defined as follows:
>
> (a)  Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.
>
> (b)  For the purposes of §§ 66-3-305(a)(2) and 66-3-306, a person gives a reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale or execution of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust, or security agreement.
>
> (c)  A transfer is made for present value if the exchange between the debtor and the transferee is intended by them to be contemporaneous and is in fact substantially contemporaneous.

TENN. CODE ANN. § 66-3-304 (2004).  The Plaintiff argues that there was no foreclosure and the Defendants are not entitled to application of this statutory "definition" of reasonably equivalent value, stating that in a regularly conducted foreclosure sale, where the value of the property exceeds the debt, a debtor is entitled to a surplus, whereas in this case, the Defendants obtained a windfall in the amount of the difference.  On the other side, the Defendants argue that § 66-3-304(b) applies in this case since the recording of the Quit Claim Deeds, in essence, effectuated a non-collusive foreclosure sale.

The Plaintiff relies upon *Budensiek v. Williams*, 1988 Tenn. Ct. App. LEXIS 623, 1988 WL 102774 (Tenn. Ct. App. Oct. 6, 1988), in which the Halls had conveyed real property to the Williamses, taking a promissory note which was secured by a deed of trust duly recorded with the Register of Deeds for Knox County, Tennessee, and then entered into a residential lease with option to purchase agreement with the Budensieks, an arrangement known by the Halls.  *Budensiek*, 1988

74

Tenn. Ct. App. LEXIS 623, at *1-2, 1988 WL 102774, at *1.  Thereafter, the Williamses defaulted

under the promissory note and received a letter from the Halls that they would be foreclosing

pursuant to the deed of trust. *Budensiek*, 1988 Tenn. Ct. App. LEXIS 623, at *2, 1988 WL 102774,

at *1.  In lieu of foreclosure, the Williamses conveyed the property back to the Halls via warranty

deed, at which time the Halls notified the Budensieks to vacate the property, despite receiving

notification of their intent to exercise the option to purchase. *Budensiek*, 1988 Tenn. Ct. App.

LEXIS 623, at *2-3, 1988 WL 102774, at *1.  On appeal, the Tennessee Court of Appeals affirmed

the trial court's determination that the conveyance of property via a warranty deed given to avoid a

foreclosure was, in fact, a conveyance by deed and not foreclosure, and that the grantees therefore

took the property subject to an existing lease and option agreement. *Budensiek*, 1988 Tenn. Ct. App.

LEXIS 623, at *4-5, 1988 WL 102774, at *2.

In support of its arguments, the Plaintiff has primarily focused upon the statement by the

court of appeals that "[a] mortgagee taking a deed in lieu of foreclosure from a mortgagor constitutes

a purchase of the mortgagor's interest rather than a foreclosure." *Budensiek*, 1988 Tenn. App.

LEXIS 623, at *8, 1988 WL 102774, at *2.  In elaborating on this finding, the court stated:

> [A] deed in lieu of foreclosure circumvents the terms and provisions of the trust deed
> to which a subsequent grantee or lienholder is subject, and . . . the deed in lieu
> generally does not eliminate the rights of junior lienholders.  In Tennessee, where the
> trust deed describes the time, place and manner of a non-judicial foreclosure sale, the
> mortgagee must comply with the terms of the trust deed for the sale to be valid.  The
> trust deed involved provided two means of foreclosure - non-judicial and judicial.
> In the instant case, the Appellants chose to begin a non-judicial proceeding but did
> not follow the terms of the trust deed in "foreclosing" the mortgage.  The trust deed
> contained standard language that the trustee would advertise the time and place of the
> foreclosure sale at least twenty days prior to a public auction to be held at the Knox
> County Courthouse at the prescribed time.  By not complying with the foreclosure
> terms and instead taking a deed in lieu of foreclosure, a mortgagee cannot seriously
> contend that a deed in lieu is in substance a foreclosure sale.  At a foreclosure sale,

75

> all interested parties are afforded an opportunity to protect their respective interests
> when such rights can be adversely affected.  A deed in lieu transaction affords no
> interested third party an opportunity to protect his rights.

*Budensiek*, 1988 Tenn. App. LEXIS 623, at *12-13, 1988 WL 102774, at *5 (internal citations

omitted).

In support of their argument, the Defendants have relied upon *Bowman v. Midstate Finance

Co., Inc.*, a Tennessee Court of Appeals case previously cited herein concerning Counts III and IV,

which involved an agreement to quit claim a 132-acre tract to Midstate Finance Co., Inc. (Midstate)

in lieu of foreclosure.  In exchange for the quit claim deed, Midstate agreed to sell the property and,

after deducting the costs of sale, the debts Bowman owed Midstate, and an unspecified amount owed

by Bowman to a third party, to the extent the value of the 132 acres exceeded the amount of its claim

and expenses of sale, the surplus would be returned to Bowman or to designated third parties.

*Bowman*, 1999 Tenn. App. LEXIS 235, at *2, 1999 WL 219163, at *1.  Bowman's brother, claiming

to be an equitable owner of the 132 acres, filed suit asserting, *inter alia*, that the conveyance between

Bowman and Midstate was fraudulent as to creditors, and the trial court dismissed the brother's

claim.   *Bowman*, 1999 Tenn. App. LEXIS 235, at *1, 1999 WL 219163, at *1.  In affirming the

decision of the trial court, the Tennessee Court of Appeals stated:

> We think the **consideration** paid in this case was not only "**fair**" but "full."
> Midstate agreed to take the property and sell it, and then to remit to Scott Bowman
> all the proceeds above the debts he owed to the bank and to Mr. Shofner.  Since a
> transfer for an antecedent debt qualifies as **fair consideration**, the transfer to
> Midstate cannot be set aside on this ground.

*Bowman*, 1999 Tenn. App. LEXIS 235, at *5-6, 1999 WL 219163, at *2.[27]

---

[27] *Bowman* was decided under Tennessee's Uniform Fraudulent Conveyance Act which was effectively repealed
(continued...)

76

The court finds *Budensiek* and *Bowman* to stand for the proposition that a mortgagor executing a quit claim deed or warranty deed in lieu of foreclosure receives reasonably equivalent value when the mortgagor ultimately realizes the value of the property conveyed by way of receipt of surplus funds, payment of additional debts owed, or some other monetary benefit should the value of the encumbered property exceed the amount of the antecedent debt. The court does not, however, find *Bowman* to stand for the proposition that, as the Defendants contend, a mortgagor transferring property to a mortgagee by way of a quit claim deed in lieu of foreclosure automatically receives a reasonably equivalent value notwithstanding a disparity in the actual value of the property and the antecedent debt.

Additionally, the *Budensiek* case can be distinguished in that the Halls never attempted to foreclose upon the property in question and, instead, merely advised of their intent to pursue foreclosure and accepted a warranty deed in lieu thereof, where, in this case, the Defendants commenced foreclosure proceedings under the Deeds of Trust in early 2007, and it was only after the Plaintiff, through Mr. Collier, requested additional time and forbearance that the Defendants accepted the escrowed Quit Claim Deeds to be utilized in lieu of the previously scheduled foreclosure. Nevertheless, the recording of a quit claim deed in lieu of foreclosure, even when

---

[27](...continued)

on July 1, 2003, by enactment of the Uniform Fraudulent Transfer Act. Under the terms of the Uniform Fraudulent Conveyance Act, a conveyance was made fraudulent "without regard to intent, if the transfer was for an inadequate consideration and the transferor was insolvent, or was rendered insolvent by the transfer." *Bowman*, 1999 Tenn. App. LEXIS 235, at *3, 1999 WL 219163, at *1 (citing TENN. CODE ANN. § 66-3-305). Under the Uniform Fraudulent Conveyance Act, "fair consideration" is given "[w]hen in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied[.]" *Bowman*, 1999 Tenn. App. LEXIS 235, at *4, 1999 WL 219163, at *2 (quoting TENN. CODE ANN. § 66-3-304).

77

consensual, does not constitute "a regularly conducted, noncollusive foreclosure sale" to conclusively equate reasonably equivalent value under § 66-3-304(b).

As previously stated in section E of this Memorandum, *supra*, there are genuine issues of material fact concerning the value of the Webb Mountain Property and whether the Plaintiff received reasonably equivalent value under the Bankruptcy Code.  The same deficiencies are present as the law applies under the Tennessee statute with respect to valuation in terms of whether the Plaintiff received reasonably equivalent value under the Conditional Extension Agreement, Escrow Agreement, and Quit Claim Deeds.  Without additional facts material to the issue, the court cannot make these determinations.  Likewise, without additional facts concerning the Plaintiff's assets and their value, the court cannot make a determination as to insolvency, which is defined by statute as follows:  "(a) A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation[; and] (b) A debtor who is generally not paying his or her debts as they become due is presumed to be insolvent[,]" TENN. CODE ANN. § 66-3-303 (2004), and includes only those debts "in existence when the conveyance is made."  *Crocker v. Ryan*, 914 S.W.2d 551, 553 (Tenn. Ct. App. 1995).

Because there are genuine issues of material fact, summary judgment is not appropriate for Counts XII and XIII.

## IV

In summary, with respect to the Motion for Summary Judgment filed by the Plaintiff and the Cross Motion for Summary Judgment filed by the Defendants, expressly concerning Counts VII, VIII, and X of the Amended Complaint, the court finds that there are no genuine issues of material fact and the Defendants are entitled to judgment as a matter of law. Accordingly, the Plaintiff's Motion for Summary Judgment will be denied, and the Defendants' Cross Motion for Summary Judgment will be granted. Counts VII, VIII, and X of the Amended Complaint shall be dismissed.

With respect to the Amended Motion to Dismiss Adversary Proceeding, converted to a motion for summary judgment by virtue of Rule 12(d) of the Federal Rules of Civil Procedure, the court finds that there are no genuine issues of material fact as to Counts I, II, III, IV, V, VI, and IX of the Amended Complaint, and the Defendants are entitled to a judgment as a matter of law. Accordingly, the Defendants' Amended Motion to Dismiss Adversary Proceeding, filed on August 11, 2008, is granted as to Counts I, II, III, IV, V, VI, and IX of the Amended Complaint, and they shall likewise be dismissed.

With respect to Counts XI, XII, and XIII of the Amended Complaint, the court finds that there are genuine issues of material fact and that summary judgment is not appropriate. The Defendants' Amended Motion to Dismiss Adversary Proceeding, filed on August 11, 2008, will, as to these Counts, be denied.

An order consistent with this Memorandum will be entered.


FILED:  February 11, 2009

                              BY THE COURT

                              /s/  RICHARD STAIR, JR.

                              RICHARD STAIR, JR.
                              UNITED STATES BANKRUPTCY JUDGE