# MEMORANDUM OPINION

December 9, 2009

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## NORTHERN DIVISION

In re:

WEBB MTN, LLC                                             Case No. 07-32016
                                                          Chapter 11
        Debtor

WEBB MTN, LLC

        Plaintiff

v.                                                        Adv. Proc. No. 08-3070

EXECUTIVE REALTY
PARTNERSHIP, L.P.,
GERALD FRANKLIN, TRUSTEE,
GREENBRIER DEVELOPERS, LLC,
M&A ENTERPRISES, INC., and
KENNETH WHALEY

        Defendants

BEFORE THE HONORABLE RICHARD STAIR, JR.

UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

    FOR PLAINTIFF/DEBTOR:

    MAURICE K. GUINN, ESQ.
    Post Office Box 1990
    Knoxville, Tennessee 37901

APPEARANCES (continued):

FOR DEFENDANTS:

THOMAS H. DICKENSON, ESQ.
Post Office Box 869
Knoxville, Tennessee  37901-0869

1        THE COURT:  Before me is the Motion by Webb Mtn, LLC For Stay Of

2    Judgment filed by the Plaintiff on November 30, 2009, requesting a stay of the

3    Judgment entered on November 25, 2009, dismissing its Complaint pending an appeal

4    of the Judgment or until December 22, 2009, to allow the United States District Court

5    a reasonable period of time to consider a stay.  On December 3, 2009, I entered two

6    post-Judgment Orders:  an Agreed Order submitted by the parties, staying the

7    Judgment through 5:00 p.m., December 11, 2009, to give me an opportunity to rule

8    on the Motion for Stay of Judgment, and an Order entered pursuant to Rule 8002(c)

9    of the Federal Rules of Bankruptcy Procedure on motion of the Plaintiff, extending

10    the time for the Plaintiff to file its Notice of Appeal until December 17, 2009.  On

11    December 7, 2009, the Defendants filed their Brief in Opposition to Motion of Webb

12    Mtn, LLC for Stay of Judgment, arguing that the Plaintiff is not entitled to a stay for

13    failing to post a supersedeas bond and that it had not shown any of the elements

14    required for entitlement to a stay.

15        The procedural history of the Plaintiff's bankruptcy case and the facts at

16    issue in this adversary proceeding were fully stated in both the Memorandum

17    containing findings of fact and conclusions of law filed in conjunction with the

18    November 25, 2009 Judgment, and in the Memorandum on Motion to Dismiss

19    Adversary Proceeding, Motion of Webb Mtn, LLC for Summary Judgment,

20    Defendants' Cross Motion for Summary Judgment, and Motion to Strike Portions of

21    Affidavit of Kenneth Whaley filed on February 11, 2009, and need not be restated

22    here.

23        The Plaintiff filed its Motion for Stay of Judgment pursuant to Rule 8005

24    of the Federal Rules of Bankruptcy Procedure, which authorizes the court to "suspend

25    or order the continuation of other proceedings in the case under the Code or make any

appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest." Whether to grant a stay pending appeal is within the court's discretion, based upon the same factors traditionally considered concerning preliminary injunctions: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Stephenson v. Rickles Electronics & Satellites (In re Best Reception Systems, Inc.)*, 219 B.R. 988, 992 (Bankr. E.D. Tenn. 1998). The Plaintiff bears the burden of proving each factor by a preponderance of the evidence, *In re Level Propane Gases, Inc.*, 304 B.R. 775, 777 (Bankr. N.D. Ohio 2004), and "must ordinarily demonstrate to a reviewing court that there is a likelihood of reversal . . . [although it] need not always establish a high probability of success on the merits. The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay. Simply stated, more of one excuses less of the other. This relationship, however, is not without its limits; the movant is always required to demonstrate more than the mere 'possibility' of success on the merits. For example, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, 'serious questions going to the merits.'" *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153-54 (6th Cir. 1991).

    Each of the factors is to be balanced, but the court is not required to balance them equally, as "[t]he strength of the likelihood of success on the merits that needs to be demonstrated is inversely proportional to the amount of irreparable harm

that will be suffered if a stay does not issue. However, in order to justify a stay of the . . . court's ruling, the defendant must demonstrate at least serious questions going to the merits and irreparable harm that decidedly outweighs the harm that will be inflicted on others if a stay is granted." *Baker v. Adams County/Ohio Valley School Board*, 310 F.3d 927, 928 (6th Cir. 2002). Because there is an "inherent conflict of a rendering court determining the probability that its own judgment will or will not be reversed on appeal," the Plaintiff must offer something more than an assertion or expectation of success on the merits in order to prove the existence of questions as to the merits of the case and a reasonable possibility that it will, in fact, succeed on the merits of its appeal. *In re Cacioli*, 302 B.R. 429, 431 (Bankr. D. Conn. 2003). The Plaintiff here acknowledges that public interest is not affected, as this is a dispute among private parties; therefore, the analysis will be focused on the remaining factors.

With respect to the first factor, a likelihood of success on the merits, the Plaintiff raises the following issues in support of its contended likelihood of success on appeal: (1) that the value of the Franklin Tract did not decline from $21,667,775.00 in March 2006, to $6,643,676.50 as of September 18, 2007; (2) that the usable price per acre of the sole comparable used by both expert appraisers, the Three Sisters Mountain sale in July 2007, was $14,900.00; (3) that its expert, Robert J. Fletcher, has appraised numerous properties in Sevier and Blount Counties while the Defendants' expert, Donald White, has not; (4) that Mr. White did not assign any significance to the zoning classification of the Franklin Tract; (5) that the court did not consider testimony at trial concerning a development project in Ellijay, Georgia; (6) that the Defendant, Kenneth Whaley, expressed shock at the value assigned the Franklin Tract by Mr. White; (7) that the court should not have

considered equitable considerations; (8) that the Escrow Arrangement is a mortgage under Tennessee law; and (9) that the Franklin Quit Claim Deed, in combination with the Conditional Extension Agreement and Escrow Agreement, was intended as security.

I extensively addressed each of these issues raised by the Plaintiff in the Complaint, as evidenced by the Memorandum entered on November 25, 2009, and the Dismissal and Summary Judgment Memorandum filed on February 11, 2009. The first six points raised by the Plaintiff, concerning the value of the Franklin Tract, address the weight afforded the testimony of the respective appraisers. As discussed in the November 25, 2009 Memorandum, the court has broad discretion when evaluating expert testimony, especially in cases such as this one, where the expert testimony is irreconcilable. *See Kumho Tire Company v. Carmichael*, 119 S. Ct. 1167, 1176 (1999); *Nordhoff Investments, Inc. v. Zenith Electronics Corporation*, 258 F.3d 180, 191 (3d Cir. 2001); *Whitehouse Hotel, Limited Partnership v. Commissioner of Internal Revenue*, 2008 WL 4757336, at *21, 2008 U.S. Tax Ct. LEXIS 28, at *62 (United States Tax Ct. Oct. 30, 2008).

In contending that the property did not decline in value from $21,667,775.00 to $6,643,676.50, the Plaintiff insinuates that the court should have taken the $27,975,000.00 it paid for the Webb Mountain Property as a whole in March 2006, divided it by the 1,865.60 total acres of all five parcels, arrived at a price approximating $14,995.00, and then multiplied that per acre parcel by the 1,445 acres of the Franklin Tract. This methodology, however, was not raised or argued by the Plaintiff at trial. Furthermore, it is not supported by either of the expert witnesses' testimony or reports; by the existence of comparable properties selling for that price per acre; by the $9,200,000.00 consideration assigned to the Franklin Tract

on the face of the March 24, 2006 General Warranty Deed; by the conflicting testimony by Mr. White that the original $27,975,000.00 purchase price for the 1,865 acres comprising the Webb Mountain Property was inflated and not indicative of the fair market value; or by the fact that only the Franklin Tract, and not the Webb Mountain Property in its entirety, was to be valued.  The court was not mandated, nor was it persuaded by any testimony of any party, to consider the Three Sisters Mountain sale in terms of acres to be developed.  The fact of the matter is that, irrespective of the intended use for the Three Sisters Mountain property, the buyer received a total of 5,071 acres at a purchase price of $19,143,025.00, which averaged to a price per acre of $3,775.00.  Likewise, the court did not, and was not required to, find the scant oral testimony provided by both Mr. Fletcher and Mr. White concerning the sale of property in Ellijay, Georgia persuasive.

Moreover, with respect to the Franklin Tract, specifically, and the question of whether Mr. Fletcher personally visited the site, the court weighed his appraisal report, which states that he did, against his oral testimony at trial, which can be found in the Trial Transcript on page 36, line 9 through page 37, line 14, and again on page 39 at lines 15 through 17, in which Mr. Fletcher testified that he went to the location and went across the bridge which emptied into the adjoining Whaley Tract but that he did not actually go onto the Franklin Tract when making his July 16, 2009 appraisal report entered into evidence as Trial Exhibit 23 because he did not have a four-wheel drive.

The Plaintiff also disagrees with the court's statement in the November 25, 2009 Memorandum that "it would be inequitable to carve out the Franklin Tract from the entirety of the Webb Mountain Property . . .," arguing that equitable considerations do not contravene legal principles.  The court agrees and points out

7

that the Plaintiff has taken this statement out of context. In response to the Plaintiff's alternative argument, the value of the Franklin Tract and whether the payoff of the nonrecourse debt in exchange for the property was reasonably equivalent value was analyzed, and several factors, including the earlier determination that the Webb Mountain Property fell within the scope of 'single asset real estate' and the fact that the Quit Claim Deeds for each tract were, in essence, deeds in lieu of foreclosure, were examined. The court then stated that "[b]ased upon the circumstances and facts of this case and the record as a whole, the court also finds that it would be inequitable to carve out the Franklin Tract from the entirety of the Webb Mountain Property, consisting of four contiguous parcels of property, which further supports the court's determination that the Plaintiff received reasonably equivalent value for the transfer of the Franklin Tract on September 18, 2007." In context, the court was merely pointing out yet another reason that the Plaintiff received reasonably equivalent value, not basing its decision solely upon an equity issue.

Finally, the Plaintiff argues that the court erred in its determination in its Dismissal and Summary Judgment Memorandum filed on February 11, 2009, that the Escrow Arrangement was not a mortgage and that the Franklin Quit Claim Deed, along with the Conditional Extension Agreement and Escrow Agreement were intended as security. These issues were fully analyzed and addressed in my February 11, 2009 Memorandum, and the court found that the Conditional Extension Agreement, Escrow Agreement, and escrowed Quit Claim Deeds themselves established that they were executed solely as a workout, stemming from the original Promissory Notes and Deeds of Trust following the Plaintiff's default, and that nothing within them interfered with the Plaintiff's ability to remain in possession of the Webb Mountain Property unless its obligations under the original Promissory

Notes were not satisfied. The Plaintiff has not offered any argument in its Motion for Stay of Judgment that persuades me that this determination was erroneous.

With respect to the second factor, the Plaintiff has stated that it will be irreparably harmed if a stay is not granted, arguing that if the Franklin Tract were to be sold or encumbered and the Plaintiff prevailed on appeal, its opportunity to develop the property would be irreversibly lost. When analyzing irreparable harm, the Sixth Circuit has directed courts to look at three factors: "(1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided . . . remember[ing] that [t]he key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. . . . In addition, the harm alleged must be both certain and immediate, rather than speculative or theoretical. In order to substantiate a claim that irreparable injury is likely to occur, a movant must provide some evidence that the harm has occurred in the past and is likely to occur again." *Griepentrog*, 945 F.2d at 154 (quoting *Sampson v. Murray*, 94 S. Ct. 937, 953 (1974)).

The Plaintiff has not established that it will suffer irreparable harm if a stay is not granted in that it has not shown a certain and immediate harm. In its brief, the Plaintiff argues that if the Franklin Tract is encumbered or sold and it later prevails on appeal, its opportunity to develop the property as envisioned in the Concept Plan is irreversibly lost; however, the opportunity to develop the Concept Plan as it was approved by Sevier County is no longer an issue, as the Concept Plan contemplated development of not only the Franklin and M&A Tracts, but also the Whaley, Greenbrier, and Executive Realty Tracts. Furthermore, Mr. Evans testified at trial that the Defendants were in the process of developing those three tracts, along

with approximately 5.3 acres of the Franklin Tract. Based upon this testimony, it would appear that there is no danger of the property being sold to a third party, and if the Plaintiff's appeal was successful, the value of the Franklin Tract might even be enhanced by any improvements that the Defendants make to it.

For those reasons, however, there is no substantial harm to the Defendants if the stay is granted. As previously stated, the court acknowledges that the Defendants have plans to proceed with development of approximately thirty acres, which they have referred to as Phase 1, and that a portion of Phase 1 is located on the Franklin Tract. Nevertheless, at trial, Mr. Evans testified that only three of the planned thirty lots, consisting of approximately 5.3 acres, are located on the Franklin Tract. Therefore, granting the Motion for Stay of Judgment does not substantially affect the Defendants' development plans. The sole affect of keeping the stay in effect would be that the 1,445-acre Franklin Tract would remain subject to the Abstract of Suit and Notice of Lien Lis Pendens recorded by the Plaintiff on June 2, 2008, but there would be nothing to prohibit the continued development of the Franklin Tract. As reflected by the substantial record developed in this adversary proceeding, although each of the parties is unquestionably interested in developing the Franklin Tract in conjunction with the other tract or tracts owned, as the owner of record of the Franklin Tract, the Defendants are well within their rights to take affirmative steps to sell, encumber, or otherwise dispose of the property.

I do find it necessary to comment on one aspect of Mr. Guinn's argument yesterday in support of the motion for stay. Mr. Guinn argued that Mr. Collier is a sophisticated businessman and would never have agreed to a nearly $28,000,000.00 purchase price for the Webb Mountain Property that eighteen months later was worth less than $8,000,000.00. First, Mr. Collier did not purchase the Webb Mountain

1  Property, nor did he then nor does he now have any personal exposure on the

2  Promissory Notes executed in favor of the Defendants.  Second, the Notes were non-

3  recourse so neither did the Plaintiff have any personal exposure on this indebtedness.

4  There is, therefore, no necessary correlation between the purchase price of the Webb

5  Mountain Property on March 24, 2006, and the market value of the 1,865.60 acres on

6  that date.  Although Mr. Fletcher testified that the purchase price was reasonable in

7  light of the planned developments, those plan developments can no longer be factored

8  in.  Additionally, Mr. White's contradictory testimony was that the Plaintiff paid too

9  much.

10         Notwithstanding the lack of a showing that there is a likelihood of success

11  on appeal, as stated before, the other factors are weighted proportionally, and

12  although the Plaintiff will not be irreparably harmed if the stay is not granted, because

13  there is no substantial harm to the Defendants, the Motion will essentially be granted

14  in part and denied in part.  The November 25, 2009 Judgment will be stayed until and

15  through December 22, 2009, affording the Plaintiff its opportunity to request a stay

16  from the District Court if it so chooses.  With respect to the Defendants' argument

17  concerning a supersedeas bond, I will leave that up to the district court as well.

18         An Order will be entered this afternoon, gentlemen.  That order essentially

19  will provide, as I have stated, that the Motion is granted to the extent I will extend the

20  stay through December 22, 2009, but otherwise denied.

21  FILED:  December 11, 2009

22                                         /s/ *Richard Stair, Jr.*
                                           RICHARD STAIR, JR.
23                                         U.S. BANKRUPTCY JUDGE

24

25